IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| Thomas Navarro, James Giorgio,<br>and Nina Shaffer,<br><br>    Plaintiffs,<br><br>v.<br><br>United States Center for SafeSport,<br>United States Olympic &<br>Paralympic Committee, and United<br>States Equestrian Federation, Inc.,<br><br>    Defendants, | Civil Action No.:_____3:24cv00030_____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

COME NOW Plaintiffs Thomas Navarro, James Giorgio and Nina Shaffer, by counsel, and for their Complaint against the Defendants United States Center for SafeSport, United States Olympic & Paralympic Committee, and United States Equestrian Federation, Inc., state as follows:

### INTRODUCTION

1.  Plaintiffs bring this action to challenge portions of the Ted Stevens Olympic and Amateur Sports Act (the "Ted Stevens Act"), 36 U.S.C. § 220501, *et seq*., which, among other things, unconstitutionally delegates federal legislative, executive and judicial authority to a private entity to govern Plaintiffs and others participating in Olympic and amateur sports.

2.  Plaintiffs also bring this action to challenge the Defendant United States Center for SafeSport's policies and practices that have harmed Plaintiffs because such policies and practices violate Defendant United States Center for SafeSport's statutory authorities and duties, or, in the alternative, violate the Plaintiff's rights to due process under the Fifth Amendment to the United States Constitution and statutory rights under the Ted Stevens Act. Defendant SafeSport's policies

and procedures prohibit any entity other than Defendant SafeSport, including arbitrators within its procedures and purportedly this Court, from ruling on their legality. In fact, pursuant to Defendant SafeSport's policies, Plaintiffs are unable to allege all the material facts that support their claims in this Complaint because doing so would violate Defendant SafeSport's policies and procedures.

3.      Plaintiffs also bring this action to challenge the enforceability of their membership agreements with Defendant United States Equestrian Federation, specifically the unconscionable provisions requiring them to submit to Defendant SafeSport's unlawful policies and procedures.

**PARTIES**

4.      Plaintiff Thomas Navarro is a citizen and resident of the Commonwealth of Virginia, is a member of Defendant USEF, and is subject to Defendant SafeSport's authority granted under federal law.

5.      Plaintiff James Giorgio is a citizen and resident of the State of Connecticut, is a member of Defendant USEF, and is subject to Defendant SafeSport's authority granted under federal law.

6.      Plaintiff Nina Shaffer is a citizen and resident of the Commonwealth of Pennsylvania, is a member of Defendant USEF, and is subject to Defendant SafeSport's authority granted under federal law.

7.      Defendant United States Center for SafeSport ("SafeSport" or "the Center") is a private nonprofit corporation formed and existing under the laws of the State of Colorado. The Center is authorized to transact business in the Commonwealth of Virginia.

8.      Defendant United States Olympic & Paralympic Committee ("USOPC") (formerly United States Olympic Committee) is a nonprofit corporation formed and existing under the laws

of the District of Columbia. The USOPC is authorized to transact business in the Commonwealth of Virginia.

9.      Defendant United States Equestrian Center, Inc. ("USEF") is a private not-for-profit corporation formed and existing under the laws of New York with approximately 150,000 members. Thousands of USEF members are Virginia residents from whom USEF collects substantial fees for membership and for participation in scores of USEF licensed competitions held annually in Virginia.. USEF does not possess a Certificate of Authority to transact business in the Commonwealth of Virginia.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 because this case presents claims arising under the United States Constitution and federal statutes. This Court also has jurisdiction to grant a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 because an actual controversy exists among the parties.

11.      Venue is appropriate under 28 U.S.C. § 1391(a), (b)(1), (b)(3), (c)(2) and (d).

## FACTUAL ALLEGATIONS

12.      Plaintiff Thomas Navarro is a horse professional and at all times relevant herein was eligible to be a member of the Defendant USEF. Plaintiff Navarro earns his living teaching equestrians and training horses.

13.      Plaintiff Navarro was ruled ineligible to participate in USEF events in a Final Decision by Defendant SafeSport. Defendant USEF is enforcing Defendant SafeSport's Final Decision.

14.     None of the Defendants provided notice or a hearing to Plaintiff Navarro before ruling him permanently ineligible to participate and publishing his name on Defendant SafeSport's website.

15.     James Giorgio is a contractor who owns and breeds Morgan horses, which are competed and sold. Their value is determined, in part, by their competition record.

16.     Prior to July 21, 2018, Giorgio's horses regularly competed at USEF sanctioned horse shows, thereby increasing their value and marketability.

17.     Giorgio regularly attended USEF sanctioned horse shows until July 21, 2018, at which time USEF permanently banned him as a result of a decision by Defendant SafeSport.

18.     None of the Defendants provided notice or a hearing to Giorgio before ruling him permanently ineligible to participate and publishing his name on Defendant SafeSport's website.

19.     On July 21, 2018, Defendant USEF imposed a permanent ban on Giorgio and in an email to Giorgio stated that the ban was immediate. Defendant USEF also informed Giorgio that he could request an arbitration hearing at the cost of nearly $6,000.00.

20.     Giorgio requested the hearing and made the required payment of almost $6,000.00 in order to receive an opportunity to be heard.

21.     Giorgio also requested a stay of the ban until a hearing could be held, but the Defendants denied the request.

22.     Plaintiff Shaffer is a horse professional who earns her living teaching equestrians and training horses.

23.     Plaintiff Shaffer was investigated by Defendant SafeSport for alleged emotional abuse under Defendant SafeSport's "Discretionary Jurisdiction." Plaintiff Shaffer did not commit the alleged abuse.

24.     On February 26, 2024, Defendant SafeSport issued a three (3) month suspension to Plaintiff Shaffer prohibiting her from participating in USEF event. SafeSport also placed Plaintiff Shaffer on a nine (9) month probation following her suspension and issued other penalties. Defendant USEF is enforcing the suspension and other penalties issued by the Defendant SafeSport against Plaintiff Shaffer. Defendant SafeSport also published Plaintiff Shaffer's name on its website.

25.     None of the Defendants provided a hearing to Plaintiff Shaffer before suspending her from participating in USEF events and/or publishing her name and identifying her as having been suspended for committing "emotional abuse." Pursuant to the SafeSport Code, the only procedure available to Plaintiff Shaffer was a post-determination arbitration for which she was required to pay $5,200.00. Plaintiff Shaffer could not afford the arbitration fee.

26.     At the time each Plaintiff entered into their membership agreement with USEF, Bylaw 102 of the USEF Bylaws provided that USEF "shall protect the ***right*** of an athlete, coach, trainer, manager, administrator, or official to participate in athletic competitions in equestrian events." (Emphasis added).

### Legislative History of the U.S. Olympic Movement

27.     In 1978, Congress passed the Ted Stevens Act, which governs Olympic and amateur sports in the United States. Under the Ted Stevens Act, Defendant USOPC is responsible for governing the Olympic Movement in the United States.

28.     Since 1978, the number of athletes under the "Olympic umbrella" has grown exponentially and includes hundreds of thousands of amateur athletes who have no Olympic aspirations or chance at competing at the Olympic level. The United States Equestrian Federation ("USEF") alone boasts a membership of approximately 150,000 members, many of whom are

simply horse owners, fans of the sport, and other non-riding participants. The greatest segment

of membership are true amateur riders who compete at USEF sanctioned competitions but in non-

Olympic disciplines and/or at non-Olympic levels.

29.    Under the statutory framework of the Ted Stevens Act, the USOPC recognizes a

National Governing Body ("NGB") for each Olympic sport, and each NGB is a member of the

USOPC. The Ted Stevens Act sets forth specific eligibility criteria and conditions that an entity

must meet to serve as an NGB. 36 U.S.C. § 220522. These eligibility criteria include a requirement

that an NGB provide "notice and a hearing" before declaring members of the Olympic movement

ineligible to participate. 36 U.S.C. § 220522(8). (The Ted Stevens Act was reorganized such that

current § 220522(8) was formerly § 220522(a)(8), including at the time that Plaintiffs Navarro and

Giorgio were denied a hearing. The reorganization did not change the operative language in the

statute. For purposes of clarity, references herein to § 220522(8) also include the former §

220522(a)(8) if appropriate.)

30.    An NGB can lose its status as an NGB if it fails to fulfill the eligibility criteria and

conditions in 36 U.S.C. § 220522, including the notice and hearing requirements of § 220522(8).

31.    Under the original Ted Stevens Act, NGBs, including Defendant USEF, were

responsible for policing emotional, physical, and sexual abuse in their sports. In doing so, NGBs,

including Defendant USEF, provided members notice and a hearing before ruling on their

eligibility to participate due to allegations of emotional, physical or sexual abuse.

**History of SafeSport and the SafeSport Code**

32.    Prior to 2011, Defendant USOPC began the process of creating Defendant

SafeSport as an entity within its authority.

33.    On December 5, 2014, Defendant USOPC incorporated Defendant SafeSport with a principal office address of One Olympic Plaza, Colorado Springs, Colorado (the same address as USOPC).

34.    Defendant SafeSport is managed by a board of directors. According to the Center's Articles of Incorporation, "[t]he number of directors, their term of office and manner of their selection and election shall be determined according to the Bylaws of the [Center] from time to time in force."

35.    Pursuant to Defendant SafeSport's Bylaws, Directors have total control over the make-up of the Board of Directors. The Bylaws provide: "Directors shall be elected by the Board of Directors at the annual meeting of the Board of Directors," "[a]ny vacancy in the Board of Directors shall be filled by the Board of Directors," and "[a]ny director may be removed with or without cause by the affirmative vote of at least two-thirds (2/3) of the directors then in office."

36.    Defendant SafeSport's Board of Directors also controls Defendant SafeSport's governance and affairs. Defendant SafeSport's Articles of Incorporation provide that "[t]he initial Bylaws of the [Center] shall be adopted by the [Center's] board of directors. Except to the extent otherwise provided by the Bylaws, the board shall have the power to alter, amend or repeal the Bylaws from time to time in force and to adopt new Bylaws. Such Bylaws may contain any provision for the regulation or management of the affairs of the [Center] which are not inconsistent with law or these Articles of Incorporation, as the same may from time to time be amended." The Articles of Incorporation further provide that the board may amend the Articles of Incorporation at any time.

37.    The USOPC formed a working group with NGBs to draft policies and procedures governing emotional, physical and sexual abuse, including the complaint, investigation, and

adjudication process for claims of emotional, physical and sexual abuse. These policies and procedures came to be known as the "SafeSport Code."

38.     From the very beginning, Defendant USOPC intended to deny Participants a pre-determination hearing as a matter of course despite the statutory right to a pre-determination hearing granted to Participants under the Ted Stevens Act. The October 10-11, 2013 USOPC Board Minutes state, "While due process must be respected, with the process contemplating the ***possibility of a hearing*** before the AAA ***upon request***, the primary goal of the structure is to ensure that as much accurate information is collected as possible." (Emphasis added).

39.     During the course of drafting the original SafeSport Code, officials at Defendant USOPC circulated to the NGBs a draft SafeSport Code that failed to provide notice and a hearing before SafeSport issued a Final Decision on a Participant's eligibility. Instead, this draft SafeSport Code only provided for a hearing after appealing Defendant SafeSport's Final Decision to and arbitrator at the Participant's expense.

40.     Defendant USEF's General Counsel recognized the apparent conflict between the draft SafeSport Code's failure to provide a hearing before SafeSport issued a Final Decision, and the statutory requirement that NGBs provide a hearing before ruling on a Participant's eligibility contained in 36 U.S.C. § 220522(8). Defendant USEF's General Counsel raised this issue to the working group leader via email. She specifically pointed out that under the SafeSport Code, Participants would be deprived of a hearing that they are afforded in every other context of sport, including anti-doping cases that are adjudicated through USADA.

41.     Despite being aware of the NGB's statutory requirement to provide a pre-determination hearing to Participants, the USOPC didn't include a pre-determination hearing in the SafeSport Code.

42.     The original SafeSport Code became effective on March 3, 2017.  At that time, the Defendant SafeSport was under the jurisdiction of Defendant USOPC, and the Defendant USOPC required all NGBs to sign off on the SafeSport Code.

43.     The original SafeSport Code included three separate sections: (1) SafeSport Code for the U.S. Olympic and Paralympic Movement; (2) SafeSport Practices and Procedures for the U.S. Olympic and Paralympic Movement; and (3) Supplemental Rules for U.S. Olympic and Paralympic Movement Arbitration.

44.     The original SafeSport Code governed anyone within the Olympic movement, including but not limited to athletes, coaches, trainers, team staff, medical or paramedical personnel, administrators, officials, other athlete support personnel, NGB employees and volunteers.

45.     The original SafeSport Code provided that Defendant SafeSport had exclusive authority to investigate and resolve allegations of sexual misconduct.

46.     The original SafeSport Code provided that Defendant SafeSport had discretionary authority over other allegations as follows: "On the written request of the NGB or USOPC, [SafeSport] may, in its discretion, accept authority over alleged violations of any prohibited conduct under the [SafeSport] *Code*." This discretionary authority included allegations of emotional or physical misconduct, including bullying behaviors, hazing and harassment. If the NGB or USOPC didn't request SafeSport accept authority over alleged violations of the SafeSport Code, then the NGB would investigate them using their own rules, which, in Defendant USEF's case, provided a pre-determination hearing.

47.     The investigation and resolution procedures in the original SafeSport Code did not provide a hearing before Defendant SafeSport issued a Decision on whether a violation occurred

and, if so, the sanctions to be issued. Instead, the original SafeSport Code only provided a limited opportunity for an accused to provide limited evidence to an investigator. The original SafeSport Code also called for SafeSport to remove the identity of witnesses from the written Decision so they couldn't be identified by an accused.

48.    Under the original SafeSport Code, in order to get a limited post-determination hearing, an accused was required to request arbitration within five (5) business days and to pay a fee of $5,200.00. In addition, the accused was also charged a "room fee" of $400.00, which was not identified in the SafeSport Code.

49.    The original SafeSport Code limited the scope of arbitration as follows: "Arbitration shall resolve only whether a Responding Party violated the *SafeSport Code for the U.S. Olympic and Paralympic Movement (Code)* and/or the appropriate sanction (if any). Challenges to, or complaints about, any organizational practices or procedures shall not be addressed and the arbitrator shall be limited to evaluating whether a Covered Individual violated the *Code*, and, if so, the appropriate sanction." Thus, the original SafeSport Code resolution procedures did not provide any opportunity for an accused to be heard on the issue of whether the SafeSport Code, and/or Defendant SafeSport's policies and practices, violated his or her rights under the Ted Stevens Act or any other source.

50.    Despite an NGB's obligation to protect its members' rights and to provide a hearing before declaring them ineligible, neither Defendant USEF nor any other NGB took any action to protect its members' rights under the Ted Stevens Act.

51.    Instead, USEF and the other NGBs acquiesced to the "work around" drafted by Defendant USOPC and Defendant SafeSport to avoid their obligation to provide a hearing before declaring someone ineligible to participate.

10

52.    At the time the USOPC created Defendant SafeSport and the first version of the SafeSport Code, the USOPC and SafeSport were aware that the Ted Stevens Act required NGBs to provide a hearing to Participants before declaring them ineligible, yet ignored that statutory requirement in the SafeSport Code.

53.    In March 2018, Congress passed the United States Center for Safe Sport Authorization Act of 2018 (the "2018 Amendment"), which amended the Ted Stevens Act in several respects. The 2018 Amendment made Defendant SafeSport independent from Defendant USOPC and gave Defendant SafeSport considerable legislative, regulatory, administrative, and judicial powers.

54.    The 2018 Amendment declared that SafeSport "*shall … serve as the independent national safe sport organization* and be recognized worldwide as the independent national safe sport organization for the United States," and "*exercise jurisdiction* over the [USOPC], each national governing body, and each paralympic sports organization *with regard to safeguarding athletes against abuse, including emotional, physical, and sexual abuse, in sports.*" 36 U.S.C. § 220541 (a)(1)(A)-(B). (Emphasis added).

55.    The 2018 Amendment also provided broad regulatory and enforcement powers to the Defendant SafeSport, including mandating that Defendant SafeSport shall "*maintain an office for response and resolution* that *shall establish mechanisms that allow for the reporting, investigation, and resolution … of alleged sexual abuse in violation of the Center's policies and procedures,*" and "*ensure that the [these] mechanisms … provide fair notice and an opportunity to be heard* …." 36 U.S.C. § 220541(a)(1)(D)-(E). (Emphasis added).

56.    In the 2018 Amendment, Congress not only gave federal regulatory and enforcement authority to the Center, but also gave it federal legislative authority. The 2018

Amendment provides that the policies and procedures in the SafeSport Code "shall apply as though they were incorporated in and made a part of section 220524 of this title." 36 U.S.C. § 220541(b). Thus, SafeSport's policies would be codified in 36 U.S.C. § 220524 upon being issued by Defendant SafeSport without ever being reviewed by Congress or any federal agency.

57.    The SafeSport Code governs the conduct of all Participants in Olympic and amateur sports.

58.    In the 2018 Amendment, Congress required that Defendant SafeSport publicly identify persons found to be in violation of the SafeSport Code on its website.

59.    Although Congress also included in the 2018 Amendment a requirement that SafeSport "ensure that the mechanisms" for reporting, investigating, and resolving SafeSport allegations provide "fair notice and an opportunity to be heard," Defendant SafeSport never changed the SafeSport Code to provide a predetermination hearing to Participants before making a Final Decision.

60.    While granting federal legislative and executive authority to the Center, Congress didn't provide for any oversight of the Center's activities by a federal administrative agency or department of the Executive Branch. The only oversight of the Center was minimal oversight by the Government Accounting Office ("GAO"), which is an independent agency created by Congress to assist Congress, and its oversight only pertained to fiscal issues and ensuring the Center remained independent from the USOPC and NGBs. The only other oversight called for in the 2018 Amendment is a requirement that Center "submit an annual report to Congress." 36 U.S.C. § 220543(b).

61.    After Congress passed the 2018 Amendment, Defendant SafeSport revised and/or amended the SafeSport Code but didn't provide for a hearing before issuing a Final Decision.

Instead, the SafeSport Code still provided for an appeal to an arbitrator at the expense of the accused, and limited the scope of the appeal to whether the accused violated the code and, if so, whether the sanctions were appropriate.

62.     In or around March 2017, Defendant USOPC changed its relationship with Defendant SafeSport to a purely contractual relationship. Upon information and belief, this relationship is set forth in a Master Services Agreement between the USOPC, the Center, and the NGB's, including Defendant USEF.

63.     Defendant USOPC required all NGBs to sign off on the Master Services Agreement.

64.     The Master Services Agreement delegates all responsibility for the adjudication and determination of SafeSport violations to the Center by the USOPC and the NGBs.

65.     In the Master Services Agreement, the USOPC and the NGBs, including Defendant USEF, specifically represented that they had the "right to grant the rights [being transferred] under this MSA to [the Center]."

66.     The Master Services Agreement contains a requirement that the parties comply with the law.

67.     In 2020, Congress passed the Empowering Olympic and Amateur Athletes Act of 2020, which amended the Ted Stevens Act in several respects.

68.     Under the 2020 Amendment, Congress added § 220541(a)(1)(h), which requires Defendant SafeSport to provide "procedural due process" to an accused Olympic Participant in every step of its investigation and resolution process.

69.     Defendant SafeSport revised and/or amended the SafeSport Code effective April 15, 2019. Defendant SafeSport revised and/or amended the SafeSport Code effective April 1, 2020.

Defendant SafeSport revised and/or amended the SafeSport Code in 2021-2023. None of these revisions included any participation or oversight by Congress or any federal agency, or an opportunity for public comment or participation in the rule changing process.

70.    Although the 2022 version of the SafeSport Code added the language from the new procedural due process provisions contained in the 2020 Amendment to the Ted Stevens Act, Defendant SafeSport did not change its procedures to provide a hearing to Participants before issuing a Final Decision.

71.    The SafeSport Code has never provided a predetermination hearing to Participants before issuing a Final Decision.

72.    Defendant SafeSport does not provide any notice of pending amendments to the SafeSport Code. Instead, SafeSport includes the following provision:

> The Code is administered by the Center. The USOPC, NGBs, and Local Affiliated Organizations (LAOs) must comply, in all respects, with these policies and procedures and shall be deemed to have incorporated the provisions into their relevant policies as if they had set them out in full therein.
>
> ***
>
> Participants are responsible for knowing the information outlined herein and, by virtue of being a Participant, have expressly agreed to the jurisdiction of the Center and this Code's policies and procedures, including those governing arbitration. The Center reserves the right to make changes to the Code as necessary. ***Once posted online, notice has been provided and changes are effective immediately unless otherwise noted.***

See, e.g., SafeSport Code (effective April 1, 2023), p.1. (Emphasis added).

73.    Neither the SafeSport Code nor the Defendant SafeSport—while under the jurisdiction of the Defendant USOPC and while independent—has ever provided a hearing to a Participant before issuing a decision on their eligibility to participate in sport.

14

74.     Every version of the SafeSport Code has severely restricted the scope of issues on which an accused could be heard, thereby denying accused Participants any meaningful opportunity to be heard. The SafeSport Code has never provided a pre-determination hearing and has always provided for a post-determination arbitration at the accused's expense. The SafeSport Code has limited the scope of authority of an arbitrator to the substantive issues of whether the code was violated and/or whether the penalty is appropriate. The SafeSport Code has always denied the right to appeal the arbitrator's decision. Despite providing no due process safeguards, the SafeSport Code has always contained a provision that persons found in violation without a hearing will be publicly identified on Defendant SafeSport's website.

75.     Defendants have been able to deprive Participants of their statutory right to a predetermination hearing since 2017 by manipulating the procedures in the SafeSport Code to avoid any adjudication of the lawfulness of the SafeSport Code procedures by a court or an arbitrator.

76.     For years, the SafeSport Code provided that issues relating to the SafeSport Code policies and procedures are not within the scope of the arbitrator. Accordingly, when Participants contested the lawfulness of the procedures during an arbitration, the Center successfully argued that the arbitrator lacked the authority to rule on these issues.

77.     After Participants attempted and failed to get a ruling on the statutory and constitutional issues arising from the SafeSport Code's failure to provide a predetermination hearing, one sought a ruling in federal court. *Callaghan v. U.S. Ctr. for Safe Sport*, Case No. 2:18-cv-336-FtM-99CM (M.D.Fla. Aug. 28, 2018). In this instance, despite the language in the SafeSport Code and its arguments in arbitrations to the contrary, the Center argued that the arbitrators could review these issues through the arbitrator's independent "power to rule on his or

her jurisdiction," even though the SafeSport Code expressly denies the arbitrator's jurisdiction to hear these issues. The Callaghan court granted the Center's Motion to Dismiss ruling that the Participant had failed to exhaust his administrative remedies through the arbitration process on these issues.

78.     During his SafeSport investigation and arbitration hearing, Plaintiff Navarro filed a "Callaghan Motion" raising the issue of the failure of the Center and USEF to provide a pre-determination hearing as required by the Ted Stevens Act. In Plaintiff Navarro's case, as in many other cases, the Center argued that the arbitrator did not have the authority or jurisdiction to address a participant's objection to the SafeSport Code policies and procedures that deny them a hearing prior to issuing a Final Decision. The arbitrator agreed with the Center based on the Center's policies and procedures limiting the scope of the arbitrator's authority.

79.     Pursuant to 36 U.S.C. § 2205727, Plaintiffs Navarro and Giorgio, as well as other Participants, filed a noncompliance complaint against Defendant USEF alleging that it was violating the Ted Stevens Act, specifically 36 U.S.C. § 220522(8), because its members were being declared ineligible prior to being afforded a hearing. Ultimately, a Panel of three AAA arbitrators heard the matter.

80.     The Panel issued a lengthy Final Award (attached hereto as Exhibit A) in which it stated the following:

> For nearly ten years, [USEF] and the USOPC have failed to take the steps necessary to address the conflict between the due process rights provided by the CSS/SafeSport Code and the [pre-determination hearing] right identified in [then] Section 220522(a)(8) and potentially Section 22054l(a)(l)(H)of the Ted Stevens Act. This case only scratched the surface regarding the reasons why [USEF] and the USOPC agreed to remove the longstanding right that an accused Olympic participant was afforded a pre-determination hearing (PDH) under [then] Section 220522(a)(8) when the SafeSport system was implemented after the Dr. Larry Nasser scandal in women's gymnastics. The limited evidence presented appears to indicate that the USOPC was either directly responsible or complicit in eliminating

16

this pre-determination hearing right when the SafeSport system was created. Whether proper or not, the longstanding right that an accused Olympic participant was afforded a pre-determination hearing under [then] Section 220522(a)(8) was eliminated when the SafeSport system was created by the USOPC.

[SafeSport] only doubled down on this pre-determination hearing issue in 2018 when it assumed full control and responsibility for all cases involving sexual misconduct or abuse in sport. To add to the problem, [SafeSport] also used its exclusive authority to create SafeSport Rules that prevented an accused Olympic participant from legally challenging its adjudication procedure allowing [SafeSport] to issue final decisions against an accused Olympic participant before ever providing a pre-determination hearing.

The issue is whether Claimants could prevail in federal court regarding the legal conflict between the rules and procedures of [SafeSport] and the SafeSport Code and the conflicting due process protection identified in Section 220522(a)(8) and other sections of the Ted Stevens Act. As discussed in the analysis above, Claimants clearly have a valid procedural due process claim to adjudicate and this Panel agrees that Claimants could prevail when this conflict of law issue is eventually addressed in federal court.

The USOPC and [SafeSport] efforts to diminish or minimize this right to procedural due process has been set up for a rebuke by a federal court since the passage and implementation of the original version of the SafeSport Code in 2017 … In the meantime, hundreds of accused Olympic Participants may continue to be inappropriately deprived of a legal right to a PDH in their cases.

81.    Although the arbitration panel found that "hundreds of accused Olympic Participants may continue to be inappropriately deprived of a legal right to a [predetermination hearing] in their cases," it also found that it did not have the authority to rule on this issue.  Instead, it found that the only proper forum to address this issue would be a federal court.

## COUNT I –UNCONSTITUTIONAL DELEGATION OF POWER AND VIOLATION OF THE PRINCIPLES OF SEPARATION OF POWERS

### Against All Defendants

82.    The foregoing allegations are incorporated as if fully set forth herein.

83.    Article I, Section 1 of the United States Constitution reads: "All legislative Powers herein granted shall be vested in a Congress of the United States …." U.S. CONST. art. I, § 1.

17

84.    Article II, Section 1 of the United States Constitution reads: "The Executive power shall be vested in a President," who must "take Care that the Laws be faithfully executed." U.S. CONST. art. II, § 1, cl. 1; U.S. CONST. art. II, § 3. See also *Seila Law, LLC v. Consumer Financial Protection Bureau*, 591 U.S. 207, 140 S.Ct. 2183, 2197, 207 L.Ed.2d 494 (2020). "The entire 'executive Power' belongs to the President alone." *Seila Law, LLC v. Consumer Financial Protection Bureau*, 591 U.S. 207, 140 S.Ct. 2183, 2197, 207 L.Ed.2d 494 (2020).

85.    Because the United States Constitution grants exclusive legislative authority to Congress, and exclusive executive authority to the Executive branch, Congress cannot grant these powers to other entities, especially private entities.

86.    The Supreme Court of the United States has consistently recognized that the United States Constitution does not permit Congress to delegate the exclusive authority of a branch of the federal government to a private entity.

87.     "The nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of Government." *Mistretta v. United States*, 488 U.S. 361, 371, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989).

88.    "That Congress cannot delegate legislative power … is a principle universally recognized as vital to the integrity and maintenance of the system of government ordained by the Constitution." *Marshall Field & Co. v. Clark*, 143 U.S. 649, 692, 12 S.Ct. 495, 36 L.Ed. 294 (1892).

89.    Likewise, "[f]ederal lawmakers cannot delegate regulatory authority to a private entity. To do so would be 'legislative delegation in its most obnoxious form.'" *Ass'n of Am. Railroads v. U.S. Dep't of Transp.*, 721 F.3d 666, 670 (D.C. Cir. 2013) (quoting *Carter v. Carter Coal Co.*, 298 U.S. 238, 311, 56 S.Ct. 855, 80 L.Ed. 1160 (1936). See also *Dep't of Transp. v.*

*Ass'n of Am. Railroads*, 575 U.S. 43, 64, 135 S.Ct. 1225, 191 L.Ed.2d 153 (2015) (Alito, concurring) (quoting *Carter v. Carter Coal Co.*, 298 U.S. 238, 311, 56 S.Ct. 855, 80 L.Ed. 1160 (1936).

90.     The Ted Stevens Act expressly grants legislative authority to Defendant SafeSport, which is a private entity, in violation of the nondelegation doctrine.

91.     The Ted Stevens Act provides that Defendant SafeSport's policies and procedures "shall apply as though they were incorporated and made a part of Section 220524 of this Title [of the United States Code]." 36 U.S.C. § 220541(b).

92.     The Ted Stevens Act expressly grants regulatory authority to Defendant SafeSport, which is a private entity, in violation of the nondelegation doctrine.

93.     The Ted Stevens Act delegates broad policy-making authority to Defendant SafeSport, including mandates that the Defendant SafeSport "shall exercise jurisdiction over the [USOPC] and each national governing body with regard to safeguarding amateur athletes against abuse, including emotional, physical, and sexual abuse, in sports;" "shall develop training, oversight practices, policies, and procedures to prevent abuse, including emotional, physical, and sexual abuse, of amateur athletes;" and "shall establish mechanisms that allow for the reporting, investigation, and resolution … of alleged sexual abuse in violation of the Center's policies and procedures…." 36 U.S.C. § 220541(a)(1).

94.     The Ted Stevens Act expressly grants executive authority to Defendant SafeSport, which is a private entity, in violation of the nondelegation doctrine.

95.      "As Madison explained, 'If any power whatsoever is in its nature Executive, it is the power of appointing, overseeing, and controlling those who execute the laws." *Seila Law, LLC*

*v. Consumer Financial Protection Bureau*, 591 U.S. 207, 140 S.Ct. 2183, 2197, 207 L.Ed.2d 494 (2020) (citing 1 Annals of Cong. 463 (1789).

96.     Defendant SafeSport is a private nonprofit corporation organized and existing under the law of the State of Colorado. Defendant SafeSport is controlled by an autonomous board of directors who control every aspect of Defendant SafeSport, including electing the board of directors, filling vacancies on the board of directors, removing directors from the board of directors, and determining the number of seats, length of terms, and other aspects of the board of directors.

97.     Although Congress declared in the Ted Stevens Act that Defendant SafeSport is not a "state actor," the Supreme Court of the United States has warned courts that this language is a red flag. "One way the Government can regulate without accountability is by passing off a Government operation as an independent private concern. Given this incentive to regulate without saying so, everyone should pay close attention when Congress 'sponsors corporations that it specifically designates *not* to be agencies or establishments of the United States Government.'" *Dep't of Transp. V. Ass'n of Am. Railroads*, 575 U.S. 43, 57, 135 S.Ct. 1225, 191 L.Ed.2d 153 (2015) (Alito, concurring) (Emphasis in original). "Perhaps the most telling indication of a severe constitutional problem with an executive entity is a lack of historical precedent to support it." *Seila Law, LLC v. Consumer Financial Protection Bureau*, 591 U.S. 207, 140 S.Ct. 2183, 2201, 207 L.Ed.2d 494 (2020) (citing *Free Enterprise Fund v. Public Accounting Oversight Board,* 561 U.S. 477, 483, 130 S.Ct. 3138, 177 L.Ed.2d 619 (2010) (internal quotations omitted)).

98.     The SafeSport Reauthorization Act unconstitutionally vests significant governmental power in the hands of a private corporation managed by a board of directors accountable to no one but themselves. The board is not elected by the people, nor meaningfully

controlled by someone who is. The Center does not even depend on Congress for annual appropriations. Yet the board may unilaterally without meaningful supervision amend federal statutes, issue final regulations, oversee adjudications, set enforcement priorities, initiate prosecutions, and determine penalties to impose on private parties.

99.     The Ted Stevens Act unconstitutionally grants to Defendant SafeSport, a private, independent, self-regulatory, non-profit corporation, the power to draft, implement, administer and enforce federal law and policy regarding emotional, physical and sexual abuse in Olympic and amateur sports. Defendant SafeSport has regulatory control over virtually anyone participating in amateur sports in the United States, including players, coaches, administrators, referees and other officials. Defendant SafeSport is charged with developing programs and promulgating rules covering all facets of emotional, physical and sexual abuse in Olympic and amateur sports in the United States. Further, the Ted Stevens Act grants Defendant SafeSport the authority to enforce alleged rules violations and requires Defendant SafeSport to publicly identify anyone found to be in violation.

100.    Defendant SafeSport is funded by the USOPC, NGB's, and receives a grant from the United States Department of Justice.

101.    Plaintiffs seek a declaration that the Congressional grants of authority to Defendant SafeSport contained in The Ted Stevens Act are unconstitutional grants of legislative, executive, and judicial authorities in violation of the nondelegation doctrine. In addition, Plaintiffs seek a declaration that Defendant SafeSport was without authority to create a SafeSport Code or enforce the rules and regulations contained in the SafeSport Code, and that each of the penalties issued by Defendant SafeSport and enforced by Defendant USEF be struck and that each of the Defendants be enjoined from continuing to enforce the sanctions against Plaintiffs.

## COUNT II – VIOLATION OF THE APPOINTMENTS CLAUSE

### Against All Defendants

102.    The foregoing allegations are incorporated as if fully set forth herein.

103.    In the alternative, if a court were to find that the grant of power is such that Defendant SafeSport is a public entity, it would still be unconstitutional because appointment of its Board of Directors violates the Appointments Clause of the United States Constitution.

104.    Under the Appointments Clause, only the president, a head of a department, or a court of law may appoint an officer of the United States. U.S. CONST. art. II, sec. 2, cl.2.

105.    If the Center is deemed public, the Center's Board of Directors would be officers of the United States because they "occupy a continuing position established by law" and exercise "significant authority pursuant to the laws of the United States." *Lucia v. SEC*, 585 U.S. __, 138 S.Ct. 2044, 2051, 201 L.Ed.2d 464 (2018)(internal quotation marks omitted).

106.    The Center's Board members are not appointed by the president, a head of a department, or a court of law. Instead, they are elected by Board members *i.e.*, themselves.

107.    Thus, the appointment of the Center violates the Appointments Clause.

108.    Plaintiffs and other Participants are harmed by the unconstitutional appointment of the Center because they are subjected to policies and procedures that violate the Ted Stevens Act and the United States Constitution. Plaintiffs and other Participants are further harmed by the unconstitutional appointment of the Center because the dues and fees paid by them to USEF have financed the Center.

109.    Plaintiffs seek a declaration that The Ted Stevens Act, specifically the authorization of the Center, violates the Appointments Clause of the United States Constitution.

## COUNT III– VIOLATION OF TED STEVENS ACT

**Against Defendants United States Equestrian Federation, Inc. and United States Olympic & Paralympic Committee**

110.    The foregoing allegations are incorporated as if fully set forth herein.

111.    Since 1978, the Ted Stevens Act has required that in order to be eligible to serve as an NGB for an Olympic Sport, an NGB, including Defendant USEF, must give its members a hearing before declaring them ineligible to participate in sports competitions.

112.    Pursuant to the Ted Stevens Act, Defendant USOPC has the duty to ensure that NGBs, including Defendant USEF, fulfill the eligibility requirements under the Act.

113.    From approximately 2013 through 2017, Defendant USOPC, with input from the NGB's, drafted the SafeSport Code to govern emotional, physical and sexual abuse of athletes in Olympic and amateur sports. Defendant USOPC also mandated that every NGB, including Defendant USEF, sign off on the SafeSport Code and comply with its provisions. Despite the requirement of a pre-determination hearing contained in the Ted Stevens Act, 36 U.S.C. § 220522(8), Defendant USOPC did not include a pre-determination hearing in the SafeSport Code.

114.    Since 2017, Defendant USEF has been in violation of the Ted Stevens Act by declaring Participants, including Plaintiffs, ineligible to participate in competition without a pre-determination hearing.

115.    Defendant USEF has declared each of the Plaintiffs to be ineligible to participate without a pre-determination hearing.

116.    By implementing sanctions against Plaintiffs, and dozens of other members, under the foregoing circumstances, USEF violated 36 U.S.C. §220522(8). By continuing to enforce the sanctions knowing that Plaintiffs, and dozens of other members, were not provided notice and/or a hearing, USEF continues to violate 36 U.S.C. §220522(8).

117.    Since 2017, Defendant USOPC has not only failed to ensure that NGBs, including Defendant USEF, fulfilled their eligibility requirements under the Ted Stevens Act, but also directed them not to fulfill those requirements, and or assisted them in avoiding them.

118.    Plaintiffs seek a declaration that 36 U.S.C. § 220522(8) provides members of Defendant USEF the right to a hearing prior to being ruled ineligible, and that Defendants USEF and USOPC have violated, and are continuing to violate, that right by enforcing the sanctions against Plaintiffs making them ineligible to participate knowing they did not receive a hearing. Plaintiffs further request that Defendant USEF be permanently enjoined from continuing to enforce the sanctions against Plaintiffs.

## COUNT IV – VIOLATION OF THE TED STEVENS ACT

### Against Defendant United States Center For SafeSport

119.    The foregoing allegations are incorporated as if fully stated herein.

120.    The Ted Stevens Act has granted the right to a pre-determination hearing to Participants since 1978.

121.    Congress reiterated this right when it amended the Ted Stevens Act in 2018. The 2018 Amendment granted authority to Defendant SafeSport to draft, implement, investigate and adjudicate allegations of emotional, physical, and sexual abuse of athletes in Olympic and amateur sports. The 2018 Amendment did not in any way abrogate or amend the requirement set forth in 36 U.S.C. § 220522(8). In fact, the statute authorizing the Center, 36 U.S.C. § 220541, reinforces the requirement in 36 U.S.C. § 220522(8) and mandates that the Center's procedures must give fair notice and opportunity to be heard. 36 U.S.C. § 225041(a)(5).  These two provisions must be read in harmony with one another given that they are both within the Ted Stevens Act and that Congress did not create an exception to § 220522(8) when it enacted § 220541(a)(5). *United States*

*v. Banker,* 876 F.3d 530 (4th Cir. 2017) (absent an indication that we should do otherwise, the Court should interpret statutes *in pari materia*, that is, in a consistent manner in which adjacent statutory subsections that refer to the same subject matter are read harmoniously to ensure that a statutory scheme is coherent and consistent).

122.    Congress again reiterated the right to a pre-determination hearing when it amended the Ted Stevens Act in 2020. In the 2020 Amendment, Congress expressly required Defendant SafeSport to provide "procedural due process" in every action it takes against a participant. Also in the 2020 Amendment, Congress did not remove the pre-determination right granted to Participants under § 220522(8).

123.    When Congress required Defendant SafeSport to provide "notice and an opportunity to be heard, and "procedural due process," it meant that Defendant SafeSport was required to provide procedural due process within the meaning of the Fifth Amendment to the United States Constitution.

124.    In other words, Congress found that the statutory benefits granted in the Ted Stevens Act, either separately or in combination with the potential stigma and harm to a participant's name, honor, integrity and reputation as a result of identifying them on the Defendant SafeSport's public website, required the protections of due process in Defendant SafeSport's policies and procedures to deprive them of those rights.

125.    When Congress grants statutory rights to individuals and directs an agency to establish a procedure affecting those rights, "it can be assumed that Congress intends that procedure to be a fair one." *Marincas v. Lewis*, 92 F.3d 195, 203 (3d Cir. 1996) (also stating doubt that Congress intended to provide a procedure that fails to provide basic due process).

126.    Congress adopted the language contained in the Ted Stevens Act, the 2018 Amendment, and the 2020 Amendment in light of the history of American jurisprudence defining "notice and an opportunity to be heard," and "procedural due process." "Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and an opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Trust Co*., 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed.2d 865 (1950). "We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (emphasis in original) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).

127.    Fair notice and opportunity to be heard for USEF athletes has a meaning that is set forth in the Act in §220522(8), in Bylaw 701 of the USEF, and in USEF's long-established hearing process rules which include but are not limited to the following rights:

    a.    each party will have the right to appear personally and/or through a representative;

    b.    Respondents will receive written notice of any alleged violation or Complaint against them, along with a reference to potential consequences;

    c.    Respondents will be given a reasonable time before a hearing in which to prepare a defense;

    d.    the Hearing Panel will hold the hearing in as prompt and timely a manner as is practicable under the circumstances. The Hearing Panel will strive to

schedule a hearing within ninety (90) days of the determination that a Complaint is properly filed, and to issue its written decision within thirty (30) days after a hearing;

e.    parties will be given a reasonable opportunity to present and examine evidence, cross-examine witnesses that testify at the hearing, and present argument, all subject to limiting rulings by the Hearing Panel;

f.    The parties may present live witnesses or affidavits or other witness statements and documentary proof to support their arguments subject to limiting rulings by the Hearing Panel. The Hearing Panel will typically give less weight to affidavits or witness statements when the author is not subject to cross-examination at the hearing;

g.    all parties will receive a written decision from the Hearing Panel, which will include notice of the applicable appeal procedures;

h.    subject to applicable provisions below related to Temporary Measures, individuals will be provided with fair notice and opportunity for a hearing before being declared ineligible to participate; and

i.    in cases where a temporary measure is implemented, the opportunity for a hearing will be provided on an expedited basis so as to hear the matter as soon as practicable.

128.    The legislative history of the 2018 Amendment indicates that the Center is modeled on the designation authorizing the United States Anti-Doping Agency (herein "USADA"), an independent body authorized to adjudicate athlete doping cases. (Senate Report 115-443). Unlike the Center, the USADA's adjudication process provides for a pre-determination hearing by a

27

neutral arbitrator, which allows NGB's to enforce USADA determinations of ineligibility without risking their NGB status.

129.    The Ted Stevens Act requires that Defendant SafeSport provide notice and a pre-determination hearing to Participants.

130.    Plaintiffs seek a declaration that the Ted Stevens Act grants Participants, including Plaintiffs, the right a hearing before Defendant SafeSport can issue a decision on the complaints against them, and that Defendant SafeSport's policies and procedures violated Plaintiffs' rights by failing to provide a hearing before Defendant SafeSport issued a decision on the complaints against Plaintiffs, that Defendant SafeSport's provision of an arbitration hearing does not comply with the Ted Stevens Act, and  that the sanctions imposed by Defendant SafeSport against Plaintiffs are void.

## COUNT V – THE TED STEVENS ACT VIOLATES THE PLAINTIFFS' RIGHTS TO DUE PROCESS UNDER THE FIFTH AMENDMENT

### Against All Defendants

131.    The foregoing allegations are incorporated as if fully stated herein.

132.    In the alternative, The Ted Stevens Act violates the Plaintiffs' rights to Due Process under the Fifth Amendment to the United States Constitution by failing to provide a pre-determination hearing.

133.    "While the legislatures may elect not to confer a property interest … it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards …. The adequacy of statutory procedures for deprivation of a statutorily created property interest must be analyzed in constitutional terms." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (internal quotations and citations omitted).

28

134.    "The fifth amendment enjoins the federal government from depriving any person of 'life, liberty, or property, without due process of law.'" *McNeill v. Butz*, 480 F.2d 314, 318 (4th Cir. 1973).

135.    The Supreme Court of the United States has long held that "[w]here a person's good name, reputation, honor, or integrity are at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). When a governmental action deprives an individual "of a right previously held under state law," or "a right or status previously recognized by state law is distinctly altered or extinguished," the government must provide a hearing. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)..

136.    In other words, "'liberty' is implicated and procedural due process is required when government action threatens an employee's good name, reputation, honor, or integrity*." McNeill v. Butz*, 480 F.2d 314, 319 (4th Cir. 1973) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); *Wieman v. Updegraff*, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952)).

137.    "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and an opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, (1985) (quoting *Mullane v. Cent. Hanover Bank Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656-57 (1950)).

138.    "Due process requires, as a general matter, an 'opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976).

139.    "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and an opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, (1985) (quoting *Mullane v. Cent. Hanover Bank Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656-57 (1950)).

140.    "We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, (1985) (emphasis in original) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971)).

141.    The Ted Stevens Act grants constitutionally protected property and liberty interests to Participants, including Plaintiffs. Each of the Plaintiffs is or was a member of Defendant USEF pursuant to their federal rights granted under the Ted Stevens Act, and eligible to participate in USEF events. As such, each of the Plaintiffs was entitled to remain a member of Defendant USEF and participate in USEF events unless they were removed for cause.

142.    The Ted Stevens Act mandates the procedural requirements under which Participants, including Plaintiffs, may be deprived of the constitutionally protected rights granted by the Act.

143.    The Ted Stevens Act requires Defendant SafeSport to alter or extinguish the rights afforded under the Act to Participants, including their status under the Act, and to publish the names of persons found to be in violation of the SafeSport Code, which, because of its nature, stigmatizes and threatens their reputation, honor, good name, and integrity, as well as causing them other harms.

144.    Because the Ted Stevens Act requires Defendant SafeSport to publish the names, sanctions, and alleged violations of the SafeSport Code, which governs emotional, physical, and sexual abuse of athletes, a post-determination hearing is inadequate and does not provide a meaningful opportunity to be heard, as required by the Fifth Amendment of the United States Constitution.

145.    If the Ted Stevens Act fails to require a hearing before depriving Plaintiffs and other Participants of their constitutionally protected rights, then the Act violates the Fifth Amendment of the United States Constitution.

146.    Plaintiffs seek a declaration that the Ted Stevens Act violates Plaintiffs' Fifth Amendment rights to due process, that a post-deprivation hearing is, or was, insufficient to remedy the harm to Plaintiffs, and that the sanctions imposed by the Center are void. Plaintiffs further request that USEF be permanently enjoined from continuing to enforce the sanctions against Plaintiffs.

## COUNT VI – VIOLATION OF 5TH AMENDMENT DUE PROCESS

### Against Defendant United States Center for SafeSport

147.    The foregoing allegations are incorporated as if fully stated herein.

148.    In the alternative, Defendant SafeSport is a federal actor for purposes of the Constitution, and the SafeSport Code violates the Plaintiffs' rights to Due Process under the Fifth Amendment to the United States Constitution.

149.    "The Constitution constrains governmental action 'by whatever instruments or in whatever modes that action may be taken." *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374, 392, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995) (citing *Ex parte Virginia*, 100 U.S. 339, 346-47, 25 L.Ed. 676 (1880).

150.    Each of the Plaintiffs is or was a member of Defendant USEF pursuant to their federal rights granted under the Ted Stevens Act, and eligible to participate in USEF events. As such, each of the Plaintiffs was entitled to remain a member of Defendant USEF and participate in USEF events unless they were removed for cause.

151.    Defendant SafeSport, pursuant to the policies and procedures in the SafeSport Code, found each of the Plaintiffs to be in violation of the SafeSport Code, and published their names on its website, without providing notice and/or an opportunity to be heard.

152.    The SafeSport Code prohibits conduct that is abhorrent by its very nature. Accordingly, being investigated for a violation of the SafeSport Code threatens a person's reputation, honor, integrity, and good name, as well as other harms.

153.    Defendant SafeSport investigated Plaintiff Navarro and found him in violation of the SafeSport Code without giving him notice of the charges against him or an opportunity to be heard. SafeSport first notified Plaintiff Navarro after it reached its Final Decision, including his sanction. As a result, Defendant SafeSport ruled Plaintiff Navarro was "permanently ineligible" to participate in any activities in Olympic and amateur sports.

154.    In addition to changing Plaintiff Navarro's eligibility status and depriving him of his federal right to be a member, SafeSport published Plaintiff Navarro's name on its publicly available website, which states he is "permanently ineligible" because of a "criminal disposition – involving a minor." This has caused Plaintiff Navarro to be stigmatized and has harmed his reputation, honor, integrity, and good name, as well as other harms.

155.    On July 21, 2018, Defendant USEF imposed a permanent ban on Plaintiff Giorgio and in an email to Giorgio stated that the ban was immediate. The email notifying him of the

permanent ban was the first time Giorgio learned that he had been under investigation by the Center or that his USEF membership status was at risk.

156.    Plaintiff Giorgio was not given notice before being declared ineligible to participate.

157.    Plaintiff Giorgio was not provided a hearing prior to being declared ineligible to participate.

158.    In addition to changing Plaintiff Giorgio's eligibility status and depriving him of his federal right to be a member, SafeSport published Plaintiff Giorgio's name on its publicly available website, which states he is "permanently ineligible" because of a "criminal disposition – involving a minor." This has caused Plaintiff Giorgio to be stigmatized and has harmed his reputation, honor, integrity, and good name, as well as other harms.

159.    Defendant SafeSport assumed discretionary jurisdiction over the complaint made against Plaintiff Shaffer.

160.    Defendant SafeSport determined that Plaintiff Shaffer had violated the SafeSport Code without providing a hearing.

161.    Had Defendant SafeSport not assumed its "discretionary jurisdiction" over Plaintiff Shaffer's complaint, Plaintiff Shaffer would have been afforded a pre-determination hearing under Defendant USEF's bylaws.

162.    In addition to changing Plaintiff Shaffer's eligibility status and depriving her of her federal right to be a member, SafeSport published Plaintiff Shaffer's name on its publicly available website, which states she is "suspended" because of a "emotional misconduct." This has caused Plaintiff Shaffer to be stigmatized and has harmed her reputation, honor, integrity, and good name, as well as other harms.

163.    "The fifth amendment enjoins the federal government from depriving any person of 'life, liberty, or property, without due process of law.'" *McNeill v. Butz*, 480 F.2d 314, 318 (4th Cir. 1973).

164.    Plaintiffs have a protected property interest in their membership in Defendant USEF and their right to participate in amateur athletic events pursuant to the Ted Stevens Act.

165.    Plaintiffs have a protected liberty interest in their good name, reputation, honor and integrity because Defendant SafeSport has altered and/or extinguished their rights and status under the Ted Stevens Act.

166.    The Supreme Court of the United States has long held that "[w]here a person's good name, reputation, honor, or integrity are at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

167.    In other words, "'liberty' is implicated and procedural due process is required when government action threatens an employee's good name, reputation, honor, or integrity." *McNeill v. Butz*, 480 F.2d 314, 319 (4th Cir. 1973) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); *Wieman v. Updegraff*, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952)).

168.    Defendant SafeSport, acting as a governmental actor, failed to provide due process pursuant to the meaning of the 5th Amendment by failing to provide a hearing before depriving Plaintiffs of their protected property and liberty interests.

169.    "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and an opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, (1985)

(quoting *Mullane v. Cent. Hanover Bank Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656-57 (1950)).

170.    "Due process requires, as a general matter, an 'opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S.319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976).

171.    "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and an opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, (1985) (quoting *Mullane v. Cent. Hanover Bank Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656-57 (1950)).

172.    "We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, (1985) (emphasis in original) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971)).

173.    Defendant SafeSport has deprived Plaintiffs of their protected property interests.

174.    Defendant SafeSport has permanently deprived all Plaintiffs of their protected liberty interests.

175.    Because the Ted Stevens Act requires SafeSport to publish the names, sanctions, and alleged violations of the SafeSport Code, which governs emotional, physical, and sexual abuse of athletes, a post-determination hearing is inadequate and does not provide a meaningful opportunity to be heard.

176.    Plaintiffs seek a declaration that the Defendant SafeSport violated Plaintiffs' Fifth Amendment rights to due process, that a post-determination hearing is, or was, insufficient to remedy the harm to Plaintiffs, and that the sanctions imposed by the Center are void. Plaintiffs further request that USEF be permanently enjoined from continuing to enforce the sanctions against Plaintiffs.

## COUNT VII –UNCONSCIONABLE ADHESION CONTRACT

### Against Defendant United States Equestrian Federation, Inc.

177.    In order to participate in USEF recognized horse shows, an athlete must be a member of USEF.

178.    Every member must enter into USEF's membership agreement which mandates acceptance of the SafeSport Code. Members cannot negotiate the terms of the membership agreement with USEF. Thus, the membership agreement is an adhesion contract.

179.    Plaintiffs each entered into the take-it-or-leave-it membership agreement with USEF.

180.    The terms of the SafeSport Code, which are part of the membership agreement, are unconscionable, and, as such, unenforceable.

181.    In addition to not providing a hearing before a determination of ineligibility, which is an unlawful and unconscionable provision, the SafeSport Code is rife with other unconscionable, one-sided provisions.

182.    The most abhorrent of these provisions is that in order to obtain a post-determination hearing with a neutral party, Plaintiffs were required to pay $5,200.00 plus a "room fee." This is an unconscionably high price to pay when a pre-determination hearing is unconditionally afforded by statute.

183.    In addition to the unconscionably high price, an athlete cannot get a hearing on the merits until after the Center issues its decision and the sanctions are published on the internet.

184.    Other examples of unconscionable provisions include, but are not limited, to:

a.    There is no discretion for the arbitrator to permit discovery.

b.    The investigation report prepared by the Center automatically becomes admissible evidence in the merits arbitration.

c.    The claimant is questioned only by the arbitrator, but the accused is subject to cross-examination by the Center's lawyer.

d.    The SafeSport Code has no nexus to NGB activities. A non-participant may bring a complaint against a Participant arising out of facts that are wholly unrelated to sport and the Center will adjudicate the complaint.

e.    Aiding and abetting is interpreted to prevent Participants from interacting with banned Participants on private property while engaging in private activities with no nexus to NGB activities or sanctioned events.

185.    Plaintiffs seek a declaration that their membership agreements were unconscionable, adhesion contracts, and are therefore void and unenforceable, and that the sanctions imposed on them by virtue of their membership agreements are void.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment as follows:

a.    Declare that The Ted Stevens Act's delegation of legislative, executive, and/or judicial authority to Defendant SafeSport is unconstitutional because it violates the private nondelegation doctrine (Count I);

b.      Declare that The Ted Stevens Act's grant of executive authority to the Defendant SafeSport is unconstitutional because it violates the Appointments Clause of the United States Constitution. (Count II);

c.      Declare that 36 U.S.C. § 220522(8) grants Plaintiffs a right to a hearing before being ruled ineligible to participate, and that Defendants USEF and USOPC have violated, and are continuing to violate, that statutory right by enforcing the sanctions against Plaintiffs (Count III);

d.      Declare that the Ted Stevens Act required Defendant SafeSport to provide notice and a hearing to Plaintiffs prior to ruling on the complaints against them and as a result of Defendant SafeSport's failure to provide these rights the sanctions imposed by the Center are void (Count IV);

e.      In the alternative, declare that the Ted Stevens Act violates Plaintiffs' Fifth Amendment rights to due process, that a post-deprivation hearing is, or was, insufficient to remedy the harm to Plaintiffs, and that the sanctions imposed by Defendant SafeSport are void (Count V);

f.      In the alternative, declare that Defendant SafeSport violated Plaintiffs' Fifth Amendment rights to due process, that a post-deprivation hearing is, or was, insufficient to remedy the harm to Plaintiffs, and that the sanctions imposed by Defendant SafeSport are void (Count VI);

g.      Declare that Plaintiffs' membership agreements with USEF are unconscionable, adhesion contracts, and are therefore void and unenforceable, and that the sanctions imposed on Plaintiffs by virtue of their membership agreements are void (Count VII);

h.    Award permanent injunctive relief prohibiting Defendant USEF from continuing to

enforce the sanctions against Plaintiffs (Counts I-VII);

i.    Award Plaintiffs their costs associated with this action; and

j.    Award such other and further relief as may be appropriate under the circumstances.


Respectfully Submitted,


/s/ William C. Tucker
William C. Tucker (Va. Bar No. 40754)
Tamara L. Tucker (Va. Bar No. 39805)
Tucker Law Firm, PLC
690 Berkmar Circle
Charlottesville, Virginia 22901
(833) 388-2537 Phone
(833) 388-2537 Fax
bill.tucker@tuckerlawplc.com
tamara.tucker@tuckerlawplc.com

*Attorneys for Plaintiffs*