# AMERICAN ARBITRATION ASSOCIATION
## Commercial Arbitration Tribunal

Case Number: 01-20-0015-8031

James Giorgio, Estate of Robert Gage,
Mitchell Steege; Eduardo Zavala Sanchez;
Dylan Harries;Thomas Navarro;
Thomas Serio, Claimants,
v.
United States Equestrian Federation, Respondent.

## FINAL DECISION – PANEL AWARD

WE, THE UNDERSIGNED ARBITRATORS, having been designated in accordance with the arbitration agreement entered into between the above-named parties, and having been duly sworn, and having duly heard the proofs and allegations of the Parties on the merits held at the final hearing on November 7, 8 & 13, 2023, hereby AWARD as follows:

Estate of Robert Gage, Mitchell Steege; Eduardo Zavala Sanchez; Dylan Harries; Thomas Navarro; Thomas Serio, were represented in these proceedings by Tucker Law Firm, PLC, Patterson Law Firm, LLC, and Michael R. Romm, P.A. United States Equestrian Federation was represented in these proceedings by Bryan Cave Leighton Paisner, LLP and Sonja Keating of United States Equestrian Federation.

## SUMMARY

Our ruling is a comprehensive evaluation of a jurisdictional issue that has not been directly addressed by any prior court or administrative authority. The question asked is simple but frustrating. What administrative or judicial body has the jurisdictional authority to address a conflict between the rules and procedures of the U.S. Center for SafeSport (CSS and the SafeSport Code) and the conflicting due process protection identified in Section 220522(a)(8) and potentially Section 220541(a)(1)(H) of the Ted Stevens Olympic and Amateur Sports Act, 26 U.S.C. 220501, *et seq.* (the Ted Stevens Act). We note that some confusion did arise in this case because Section 220522(a)(8) was the designated subsection at issue under the Ted Stevens Act until the 2020 amendment when it was re-designated as subsection 220522(8) by Congress.

*See* Exhibits R-251 and R-256 (the parties recognize that Claimants due process claims occurred prior to the 2020 amendment). We agree with Claimants that a clear and apparent conflict of law has been identified and requires resolution. However, the authority of an AAA arbitration panel to directly address this jurisdictional issue under the authority of the USOPC Dispute Resolution Policy is limited and/or is otherwise premature under the circumstances of this case.

Based on the limited authority provided or known to exist at this time, the proper original forum to address this conflict of law issue should be a federal district court. Whether Claimants had the opportunity to appeal their adverse JAMS arbitration decisions to federal court under the Federal Arbitration Act (FAA) or any other jurisdictional basis remains unknown and unresolved. No such appeals to federal court were initiated by Claimants after their JAMS arbitration decisions. Although Claimants provided a compelling argument that this specific conflict of law issue cannot be addressed under the FAA, this Panel does not agree that we are the proper forum for making that jurisdictional determination. *See Day 3 Transcript*, Final Arguments at pgs. 242, 248-249. This Panel agrees that such a jurisdictional ruling should be made by a federal court addressing one of Claimants potential appeals after their JAMS arbitrator issued the decision in one of their cases. Had the federal court provided a ruling that it did not have jurisdiction to address the conflict of law issue regarding the due process protections identified in Section 220522(a)(8) and potentially Section 220541(a)(1)(H) of the Ted Stevens Act, then it would be clear that such a legal review is not available to Claimants under the entirety of the administrative process of CSS and the SafeSport Code. In effect, Claimants jurisdictional avenues to seek a conflict of law review of the CSS administrative SafeSport hearing and JAMS appeal process would have been administratively denied by CSS and all avenues for review exhausted to the fullest jurisdictional extent that is available under the established CSS and SafeSport adjudication process.

Had Claimants' available avenues to seek their conflict of law under the CSS adjudication process been fully exhausted in favor of CSS, the first, and potentially only, jurisdictional opportunity to properly address the conflict between the due process rights provided by the CSS/SafeSport Code and the pre-determination hearing right identified in Section 220522(a)(8) and potentially Section 220541(a)(1)(H) of the Ted Stevens Act would actually arise, for the first time, in Claimants' enforcement proceedings before Respondent and the USOPC (including

this limited appeal to an AAA arbitration panel pursuant to the USOPC Dispute Resolution Policy). Had all of these jurisdictional circumstances been established and exhausted by Claimants, the Panel recognizes that Respondent and the USOPC would have jurisdiction as well as a fiduciary duty to address the conflict between the rules and procedures of the CSS/SafeSport Code and the conflicting due process protection identified in Section 220522(a)(8) and potentially Section 220541(a)(1)(H) of the Ted Stevens Act. In that situation, however, Respondent and the USOPC are confronted with a new legal issue and potential conflict. As emphasized by Respondent, the mandatory enforcement provisions of the SafeSport Code and Ted Stevens Act would severely limit how Respondent could fulfil its duty and exercise jurisdiction to help address Claimants' issue. Neither the Respondent nor the USOPC would be able to fulfill this fiduciary duty by addressing this conflict of law issue directly. *See* SafeSport Code Section VII, and Section 220505(d)(1)(c) of the Ted Stevens Act. As discussed by the Panel and Respondent throughout these proceedings, the proper procedure to fulfill Respondent and/or the USOPC's fiduciary duty to address the identified conflict of law issue would require Respondent, or Respondent and the USOPC, to file a declaratory judgment action in the federal court. Without taking any position that might violate SafeSport Code Section VII, and Section 220505(d)(1)(c) of the Ted Stevens Act, Respondent would seek a binding court declaratory judgement ruling that resolved the conflict of law issue. Such a federal court declaratory judgement proceeding would fulfill Respondent's fiduciary duty to its Olympic participants and other members without taking any direct administrative steps or internal actions that could be contrary to the SafeSport Code or the Ted Stevens Act.

For nearly ten years, Respondent and the USOPC have failed to take the steps necessary to address the conflict between the due process rights provided by the CSS/SafeSport Code and the PDH right identified in Section 220522(a)(8) and potentially Section 220541(a)(1)(H)of the Ted Stevens Act. This case only scratched the surface regarding the reasons why Respondent and the USOPC agreed to remove the longstanding right that an accused Olympic participant was afforded a pre-determination hearing under Section 220522(a)(8) when the SafeSport system was implemented after the Dr. Larry Nasser scandal in women's gymnastics. The limited evidence presented appears to indicate that the USOPC was either directly responsible or complicit in eliminating this pre-determination hearing right when the SafeSport system was created. Whether proper or not, the longstanding right that an accused Olympic participant was

afforded a pre-determination hearing under Section 220522(a)(8) was eliminated when the SafeSport system was created by the USOPC.

The CSS only doubled down on this pre-determination hearing issue in 2018 when it assumed full control and responsibility for all cases involving sexual misconduct or abuse in sport. To add to the problem, CSS also used its exclusive authority to create SafeSport Rules that prevented an accused Olympic participant from legally challenging its adjudication procedure allowing CSS to issue final decisions against an accused Olympic participant before ever providing a pre-determination hearing. As emphasized by Claimants, this allowed CSS to publicly place the accused Olympic participant's name on what Claimants refer to as the CSS "Wall of Shame" list before ever providing the accused with a hearing. As emphasized by Claimants, the lives and careers of many longstanding Olympic participants were publicly ruined before an accused ever had the opportunity for a hearing. If the accused Olympic participant chose to request a post-determination arbitration hearing to address the CSS decision that they had violated a provision of the SafeSport Code, the accused Olympic participant was required to pay the arbitration fee to get their hearing. Claimants in this case have now spent over three years just attempting to maneuver through the CSS administrative system and USOPC review process in an attempt to exhaust their administrative remedies and obtain a merits hearing addressing whether the SafeSport adjudicative process that does not provide a pre-determination hearing is illegal under the Ted Stevens Act. The final step was this appeal to an AAA arbitration panel under the USOPC Dispute Resolution Policy. We now address the issues presented.

## ISSUES

The issues to be addressed are:

1. Did Respondent and the USOPC Hearing Panel error in determining that Claimants failed to state a claim for relief that can be granted regarding whether Section 220522(a)(8) and other sections of the Ted Stevens Act require a hearing <u>before</u> a decision by SafeSport may be enforced by Respondent depriving Claimants of their right to participate in the Olympic sport of equestrian?
2. Did Respondent error in determining that Respondent did not have jurisdiction to address

whether Section 220522(a)(8) and other sections of the Ted Stevens Act require a hearing <u>before</u> a decision by SafeSport may be enforced by Respondent depriving Claimants of their right to participate in the Olympic sport of equestrian?

3. Did the USOPC Hearing Panel error in determining that, under a Section 10 appeal, the USOPC did not have jurisdiction to address whether Respondent erred in determining that Respondent did not have jurisdiction to address whether Section 220522(a)(8) and other sections of the Ted Stevens Act require a hearing <u>before</u> a decision by SafeSport may be enforced by Respondent depriving Claimants of their right to participate in the Olympic sport of equestrian?

4. Should Respondent be awarded sanctions against the Claimants represented by Mr. Romm and Mr. Silvey because of the delays and failures to comply with discovery and other deadlines ordered by this Panel?

**BACKGROUND**

In 2018-2020, Claimants' rights to participate in the Olympic sport of equestrian were either suspended or permanently revoked by final decisions issued from the CSS under the authority of the Ted Stevens Act (Final Decision). *See* Exhibits C-80, R-33, R-54, R-62, R-76, R-93, R-100 & R-124. Certain Claimants then exercised their right to appeal the final CSS decisions to JAMS arbitrators pursuant to the SafeSport Code. *See* Exhibits R-14 at ¶5, R-34, R-57 pg. 1, R-63 pg. 2, R-77, R-119 pg. 2, & R-131 pg. 2. One Claimant, Eduardo Zavala Sanchez, testified that he could not afford the fee required to appeal his final CSS decision to a JAMS arbitrator and was never sure if or when to file his arbitration appeal. *Day 2 Transcript, Testimony of Claimant Sanchez* at pgs. 83–87. After the CSS and/or any JAMS arbitration proceeding against each Claimant CSS case was concluded by the issuance of a Final Decision or ruling, Claimants exercised their rights under Section 504 of the Respondent's bylaws to file a complaint requesting a hearing before Respondent to address the enforcement of the Final Decision in each case. Exhibits C-78, C-80 – C83, R-14 at ¶8. Claimants each raised the issue before Respondent of whether the final decision of suspension or permanent revocation imposed by CSS was unenforceable without a hearing (commonly referred to throughout this case as a pre-determination hearing or PDH) having occurred in compliance with Section 220522(a)(8) of the Ted Stevens Act. *Id.* Claimants argued that the penalties imposed by CSS violated Claimants'

Section 220522(a)(8) due process right to a PDH hearing "<u>before</u> declaring the [Claimants] ineligible to participate" in the sport of equestrian governed by Respondent. *Id.* Respondent does not dispute the fact that Claimants did not receive a PDH from CSS as part of their SafeSport penalty proceedings. *Day 3 Transcript*, Final Arguments at pg. 265. Claimants' cases were consolidated by Respondent for a resolution of the Section 220522(a)(8) argument. Without addressing the merits of Claimants Section 220522(a)(8) claim, Respondent ruled that, (1) Respondent did not have jurisdiction or authority to address Claimants' Section 220522(a)(8) argument or due process issue; and (2) the Claimants had failed to otherwise state a valid claim for relief that required a hearing before Respondent. Claimants then exercised their right under Section 220527(b)(1) and Section 10 of the USOPC Bylaws to address Respondent's procedural dismissal of their Section 220522(a)(8) claim/argument before a hearing panel (the USOPC Hearing Panel) appointed by the USOPC. Exhibit R-1 at ¶¶4-6. Claimant Serio was added to the case at this stage since his Section 220522(a)(8) argument was consistent with the other Claimants. Exhibit R-14 at ¶¶8-10. The USOPC Hearing Panel issued a decision affirming the ruling issued by Respondent on the sole basis that the USOCP Hearing Panel "does not have jurisdiction over the subject matter of [Claimants] Complaint and that the Complaint does not state a claim upon which the Hearing Panel could provide relief." Exhibit R-1 at ¶23. The USOPC Hearing Panel did not consider any other claims or contentions raised by the parties in the Claimants' Section 10 appeal to the USOPC. *Id.* at ¶¶24-25. Claimants then exercised their right to appeal the USOPC hearing panel decision to this AAA arbitration panel pursuant to the USOPC Dispute Resolution Policy. For the reasons stated below, this Panel affirms the decision issued by the USOPC hearing panel.

## ANALYSIS

The facts and legal precedent that was presented by the parties is extensive. First, we specifically emphasize that this analysis does not address any procedural due process issues that might be related to interim sanctions and measures that CSS could or did impose on any Claimant when their initial cases were opened for investigation by CSS. This analysis only addresses the Final Decision to impose sanctions, measures and penalties against Claimants after the internal investigation by CSS was completed.

Case 3:24-cv-00030-JHY-JCH  Document 1-1  Filed 04/28/24  Page 7 of 20
Pageid#: 46

To address the primary issues, we start with the enactment of the original version of Section 220522(a)(8) of the Ted Stevens Act in 1978. *See* Exhibits R-253 at §391(b)(6). According to the testimony of Respondent's expert, Mr. Jeffery Benz, §391(b)(6), currently Section 220522(a)(8) under the Ted Stevens Act, was originally enacted in 1978 and utilized to ensure that Olympic athletes could not be prohibited from participation in an Olympic event without first receiving an independent hearing (commonly referred to as a pre-determination hearing or PDH) before their respective NGB. Exhibit R-133 at ¶42; *Day 3 Transcript,* Testimony of Benz at pgs. 191-198. Based on the limited evidence presented, Section 220522(a)(8) was uniformly applied by NGB's whenever an USOPC Olympic participant's right to participate in an Olympic sport were at risk of suspension or permanent sanction for any alleged reason. *Id*. Mr. Benz also agreed that the legal "duty" to provide Olympic participants with a PDH was specifically placed on the NGBs by Section 220522(a)(8) of the Ted Stevens Act. *Day 3 Transcript,* Testimony of Benz at pg. 198. Based upon the evidence presented, this PDH structure remained in place until the drafting and implementation of the new SafeSport Code by the USOPC after the Larry Nasser crisis arose in women's gymnastics. *See* Exhibit C-1; *Day 3 Transcript,* Testimony of Benz at pgs. 191-198. In 2018, Congress also amended the Ted Stevens Act and enacted the Protecting Young Victims from Sexual Abuse and SafeSport Authorization Act (the Ted Stevens 2018 Amendment). *See* Exhibit R-256. Another amendment to the Ted Stevens Act was passed by Congress in October, 2020. (the Ted Stevens 2020 Amendment). *See* Exhibit R-251. Under the Ted Stevens 2020 Amendment, Section 220541(a)(1)(H) was added by Congress requiring that CCS must provide procedural due process to an accused Olympic Participant such as Claimants before issuing a Final Decision and specifically set out five <u>minimum</u> requirements. (Emphasis added).

The original version of the SafeSport Code went into effect in March 2017. *See* Exhibit R-269. The USOPC began creating the structure, rules and funding for CSS and the SafeSoport Code prior to the Dr. Larry Nasser story breaking into the news media. *See* Exhibit RT-133 at ¶ 14. Initially, the CSS was under the exclusive oversight of the USOPC. *See Day 3 Transcript,* Testimony of Benz at pg. 196. The first updated version of the SafeSport Code was effective in March, 2018. *See* Exhibit R-270. The second updated version of the SafeSport Code was effective on April 15, 2019. *See* Exhibits C-30 and R-271. The third update to the SafeSport

Code was effective on April 1, 2020. *See* Exhibit R-272. Additional updates were made to the SafeSport Code in 2021-2023. *See* Exhibits R-273 through R-275. Under Section IV of the initial two versions of the SafeSport Code the adjudication process and hearing procedures were vaguely written. See Exhibits R-269 pg. 9; R-270 pg. 9. After the enactment of the Ted Stevens Act 2018 Amendment, CSS established a new Section XI to the 2019-2021 versions of the SafeSport Code identifying specific dispute resolution procedures involving a Final Decision without a PDH and the new PDA hearing process was specifically implemented. Exhibit R-271 pgs. 21-26; Exhibit R-272 pgs. 22-26; Exhibit R-273 pgs. 21-26. Under the 2022 version of the SafeSport Code, the new procedural due process provisions set out in the Ted Stevens 2020 Amendment were specifically added as a new subsection J into Section XI but the CSS did not otherwise change its procedure for issuing a Final Decision without a PDH and continued with the same PDA hearing process. Exhibit R-274 pgs. 21-26. It is undisputed that no version of the SafeSport Code dispute resolution process was ever recognized by CSS to provide an accused Olympic participant with a PDH under Section 220522(a)(8) prior to the issuance of a Final Decision. *See* Exhibits R-269 through R-275.

Based on a series of emails circulated among an early working group of elite attorneys and staff within the USOPC and NGBs, the original SafeSport adjudicative hearing procedures for the original version of the SafeSport Code were discussed and formulated between February 2015 and March 2017. *See* Exhibit 1. In the email documents provided to the Panel as evidence in this case, no direct mention of Section 220522(a)(8) was included in the due process hearing discussions by the working group. *Id.* Our expert, Mr. Benz, was involved and asked to weigh in on the legal/procedural aspects of the creation of the original SafeSport adjudicative hearing process. *Day 3 Transcript,* Testimony of Benz at pgs. 130-139. Due to potential attorney-client privilege issues with the USOPC, Mr. Benz was not able to elaborate or testify further about his input or advice regarding this SafeSport hearing process that transitioned to the removal of the PDH in the new hearing procedures. *Id.* However, in March 2015, Ms. Keating, Senior VP and general counsel for Respondent, wrote an email to the group leader stating her concerns that the proposed CSS hearing procedures were not providing an accused a proper hearing "expressly require[d]" by the Ted Stevens Act. Exhibit 1 at stamped pgs. 001935-36; *See Day 3 Transcript*, Final Arguments at pgs. 255. Ms. Keating also made clear that the type of hearing she was

referencing was the one already in place for "anti-doping cases" provided by the USADA. *Id.* Mr. Benz confirmed that a PHD system was created long before SafeSport and remains in place for an Olympic athlete accused of a doping violation by the USADA. *Day 3 Transcript,* Testimony of Benz at pg. 198. To this day, a PDH is still required before any permanent doping sanction is imposed by the USADA. *Id.* Under Ms. Keating's scenario, an accused would not be given the USADA equivalent for a PDH by CSS and the NGBs would be exposed to liability because they would not be in compliance with the Ted Stevens Act and "the federal court [would find] the NGB liable because the federal statute supersedes the USO[P]C Bylaws." *Id.* At the time of this 2015 email exchange by Ms. Keating, the only hearing requirement under the Ted Stevens Act was the PDH required by Section 220522(a)(8). In response, the group leader responded that the group was looking at hearing requirements in "student disciplinary proceedings in public schools . . . [along with] policy arguments arguing in favor of a shift in our [USOPC] approach to hearings in the context of sexual misconduct." *Id.* at pg. stamped 001934. Clearly, Ms. Keating was predicting the scenario that Claimants have asked CSS, the JAMS arbitrator(s), Respondent, and this Panel to address and resolve. To date, CSS, the USOPC and the NGBs have been able to avoid any federal court review of this very issue.

The original SafeSport entity (eventually the CSS) and SafeSport Code were created for the protection of the Olympic athletic community from sexual assault and abuse was chartered by the USOPC in 2017 pursuant to the USOPC Bylaws. *See* Exhibit R-269; *Day 3 Transcript,* Testimony of Benz at pg. 35-36. It wasn't until Congress intervened in early 2018 to the Ted Stevens 2018 Amendment when CSS was officially made independent from the USOPC. *See* Section 220503(15) and 220541(a)(2). Prior to the break from USOPC oversight and jurisdiction, the initial SafeSport rules and procedures addressing the hearing process for accused Olympic participants was first being promulgated for implementation under the USOPC's control. See Exhibit 1. It was this initial set of SafeSport rules and procedures that created the conflict of law issue under Section 220522(8) that Claimants have asked CSS, Respondent and this Panel to address in this case. This conflict of law issue with Section 220522(a)(8) was something that the USOPC was fully aware of when it addressed the initial SafeSport rules and procedures. See Exhibit 1 at stamped pgs. 001935-36. Respondent's counsel, Ms. Keating, specifically identified the PDH issue when the USOPC and other

controlling participants were promulgating the initial SafeSport rules and procedures. *Id.* Despite Ms. Keating's specific identification of the PDH issue, the USOPC and other controlling participants enacted the initial SafeSport rules and procedures without requiring a PDH <u>before</u> issuing a Final Decision regarding an Olympic participant's right to participate. Exhibit R-269. Instead, the USOPC and other controlling participants created a "post-determination" right to appeal the final decision issued by CSS to an independent arbitration hearing conducted before a JAMS arbitrator (identified as the JAMS PDA in this case). Exhibits R-269-272. It is this transformation into an appellate right to pay for an independent JAMS arbitration appeal (only after CSS has rendered its Final Decision) that Claimants assert as a specific violation of their due process right under Section 220522(a)(8). *Day 3 Transcript*, Final Arguments at pgs.248-251. The history of this due process change imposed by USOPC continued in 2018 when Congress stepped in to make the CSS totally independent from the USOPC. Exhibits R-271-272.

When Congress enacted the Ted Stevens Act 2018 Amendment to codify and create the CSS as an independent administrative entity that was independent from the USOPC, it also authorized CSS to develop policies and procedures to prevent the abuse of amateur athletes and establish mechanisms to allow the reporting, investigating and resolution of alleged sexual abuse in violation of the CSS policies and procedures. See Section 220541(a)(3), (4). The CSS policies and procedures were also to be applied as though they were incorporated in and made a part of the Ted Stevens Act [Section 220544]. *See* Section 220541(b). Congress also required that CSS "ensure that the mechanisms" for reporting, investigating, and resolving SafeSport allegations provide for "fair notice and an opportunity to be heard." *See* Section 220541(a)(5). However, the Ted Stevens Act 2018 Amendment, left the due process PDH provision in Section 220522(8) intact and failed to specifically cross-reference, explain or otherwise merge the different wording between Section 220522(8) and Section 220541(a)(5). After the Ted Stevens Act 2018 Amendment went into effect, CSS neither changed the JAMS PDA hearing structure for those accused of a SafeSport violation nor included a PDH structure under Section 220522(8) before rendering a Final Decision against any accused Olympic participant. *Day 3 Transcript*, Final Arguments at pg. 265. An accused Olympic participant under the jurisdiction of CSS was still limited to a JAMS PDA after CSS completed its investigation, internal adjudication process,

and issuance of the Final Decision against the accused. Id. These were the versions of the SafeSport Code and Ted Stevens Act that were in effect when all Claimants received their Final Decisions from CSS that imposed the penalties and sanctions that are being challenged throughout this long administrative appeal process of this case.

During this overlapping timeframe, CSS entered into a Master Services Agreement with USOPC (the MSA) that contractually addressed the transition to an independent relationship between the two entities. *See* Exhibit C- 26A. All NGBs were also required to sign off on the new MSA. *Id.*, see attached exhibit 1. Similar to the Ted Stevens Act 2018 Amendment, the MSA delegated all responsibility for the adjudication and determination of SafeSport violations to CSS by the USOPC and all NGBS. *Id.*, pgs. 3-4. The USOPC and NGBs specifically represented that they had the "right to grant the rights [being transferred] under this MSA to [CSS]. *Id.*, pg. 11. No reference was made to Section 220522(a)(8) or other due process aspects of the CSS adjudication process utilized prior to the date of the MSA. *Id.* The standard "Compliance with Laws" provision in Section 14 of the MSA was the only other possible aspect of the MSA that would indirectly incorporate Sections 220522(a)(8) and 220541(a)(5) of the Ted Stevens Act into this contractual agreement between CSS, USOPC and NGBs. *Id.*, at 15.

The other important procedural development during the timeframe of Claimants' CSS cases was the issuance of the *Callaghan v. U.S. Center for SafeSport* decision and order entered by Judge Chappell in the ruling by the United States District Court for the Middle District of Florida. Exhibit C-90. *Callaghan* was a request for a declaratory judgment and injunctive relief by an accused. *Id.* at pgs. 7-11. The *Callaghan* court specifically noted that under the Ted Stevens Act Section 220503(8), the USOPC is required to provide "swift resolution of conflicts involving amateur athletes . . . and <u>protect</u> the opportunity of any amateur athlete, coach, trainer, manager, administrator or official to participate in amateur athletic competition." *Id.* at pg. 6 (emphasis added). However, the Court agreed with CSS that despite established CSS arbitration rules preventing the arbitrator's ability to address any of the CSS practices or procedures during the arbitration proceeding, these CSS rules could be properly reviewed by the arbitrator who has the independent "power to rule on his or her jurisdiction." *Id.*, at pgs. 11-13. The motion to dismiss was granted without prejudice so that the accused could exhaust his remedies by seeking a JAMS arbitration ruling regarding whether CSS could limit the jurisdiction of the JAMS

arbitrator to review the CSS rules and CSS practices and procedures. *Id*. As applicable to future cases and Claimants' cases in particular, this requirement is commonly referred to as a *Callaghan* motion.

In the present case, several Claimants filed *Callaghan* motions during their CSS proceedings and JAMS PDA hearings. *See* Exhibits C-97A, R-58, R-64, R-90, R-104, R-119, R-131. Only Claimant Sanchez did not request a JAMS PDA due to financial and other reasons. See *Day 2 Transcript, Testimony of Claimant Sanchez* at pg. 83, ln. 7; pg. 87, ln. 1. Consistent throughout the Claimants' JAMS PDA proceedings was the CSS position that the JAMS arbitrator did not have the authority or jurisdiction to address Claimants objection to the SafeSport Code policies and procedures that denied Claimants a PDH prior to CSS issuance of a Final Decision. *Id.* ; *See Day 3 Transcript*, Final Arguments at pgs. 244-245. In Claimants' JAMS PDA cases, the JAMS arbitrator agreed with CSS and dismissed Claimants request for a ruling regarding the Section 220522(a)(8) PDH. *See* Exhibit C-97 pgs. 2-4; C-104 pgs. 1-3; R-79 pgs. 5-7; R-90 pg. 3; R-104 pgs. 2-3; *Day 3 Transcript*, Final Arguments at pg. 245-246. In effect, no merits decision was issued by a JAMS arbitrator addressing the conflict between the due process rights provided by the CSS/SafeSport Code and the PDH right identified in Section 220522(a)(8) of the Ted Stevens Act. After Claimants' *Callaghan* motions were denied by the JAMS arbitrators, no appeal was taken by any Claimant for review by a federal court under the FAA.

**REASONED DECISION**

1. Did Respondent and the USOPC Hearing Panel error in determining that Claimants failed to state a claim for relief that can be granted regarding the issue of whether Section 220522(a)(8) and potentially Section 220541(a)(1)(H) of the Ted Stevens Act require a hearing before a decision by SafeSport may be enforced by Respondent depriving Claimants of their right to participate in the Olympic sport of equestrian? The answer to this first question is yes the Respondent and the USOPC Hearing Panel did error. The reasons for their error are identified below.

When addressing Claimants' procedural due process claim, the Panel's analysis doesn't focus on whether Claimants <u>would</u> formally prevail in federal court on the issue of whether Section

220522(a)(8) and other sections of the Ted Stevens Act require a hearing before a decision by SafeSport may be enforced by Respondent depriving Claimants of their right to participate in the Olympic sport of equestrian. The issue is whether Claimants could prevail in federal court regarding the legal conflict between the rules and procedures of CSS and the SafeSport Code and the conflicting due process protection identified in Section 220522(a)(8) and other sections of the Ted Stevens Act. As discussed in the analysis above, Claimants clearly have a valid procedural due process claim to adjudicate and this Panel agrees that Claimants could prevail when this conflict of law issue is eventually addressed in federal court. Mr. Benz disagrees. *Day 3 Transcript*, Testimony of Benz at pgs. 184, 201-202. Mr. Benz believes that no conflict exists between the SafeSport Code and the due process provisions of the Ted Stevens Act and any statutory interpretation of a conflict of language in the statute would be resolved in favor of CSS. *Id*. Because Respondent and the USOPC have fiduciary duties to Olympic participants such as Claimants, it is this Panel's determination that their duty to assist these Olympic participants in obtaining a federal court ruling once their jurisdiction has been established must be undertaken and fulfilled if jurisdiction has been established.

The reasons Claimants might prevail in federal court are numerous. Respondent has the duty and responsibility to assist USEF athletes, participants and members with addressing their PDH rights under Section 220522(a)(8). The duty and responsibility to adjudicate allegations of sexual misconduct were changed after the Larry Nasser incident became international news and this process was delegated by USOPC to CSS. *See Day 3 Transcript*, Testimony of Benz at pgs. 91-94, 222 and 226 (Describing the Nasser incident as "a complete and utter failure of the system to protect athletes from abuse in sports," and recognizing the delegation of the established NGB adjudication procedure by the USOPC to CSS.). However, despite changes to the Ted Stevens Act in 2018 and 2020, Congress never changed or removed the due process PDH protections for an accused set forth in Section 220522(a)(8). *Day 3 Transcript*, Testimony of Benz at pgs. 196-197. The USOPC delegation of the adjudicative process for sexual misconduct and abuse cases from NGBs to CSS can be reasonably be interpreted to have only occurred with a contemporaneous transfer to CSS of the Ted Stevens Act duties and due process obligations in place at that time. *See Day 3 Transcript*, Testimony of Benz at pg. 219. The Panel disagrees with Respondent and Mr. Benz that simply because NGBs are no longer "declaring" the individual ineligible to participate in their sport, the duties and obligations delegated to CSS as the

replacement "declarant" (effectuated by the USOPC and Congress) did not include any of the rights, responsibility or procedural due process protections of an accused contained in Section 220522(a)(8) and Section 220541(a)(1)(H). *See Day 3 Transcript*, Final Arguments at pgs. 266-267 and 270. Claimants also point out that in order for Respondent to "enforce" a CSS Final Decision against an accused, the only method to do so is to formally "declare" that the accused ineligible. *Day 3 Transcript*, Final Arguments at pgs. 287-288. This due process issue was clearly identified by Ms. Keating to the elite working group that promulgated the initial SafeSport Code and should have been directly addressed in this initial version of the SafeSport Code. Exhibit 1. The "Compliance with Laws" provision required under the MSA also supports Claimants' position that the original CSS acceptance of the adjudicative process for addressing allegations of sexual misconduct and abuse came with established legal due process duties and responsibilities under the Ted Stevens Act, being a PDH requirement under Section 220522(a)(8). Exhibit C-26A. Section 8.4.1(e)(iv) of the USOPC Bylaws also includes similar language to Section 220522(a)(8) protecting an Olympic participant's opportunity to a hearing before declaring the individual ineligible to participate. Congress also weighed in with the passage of the Ted Stevens 2018 Amendment when it added Section 220541(a)(5) requiring CSS to provide an accused an "opportunity to be heard" and stated in the Senate report that the new adjudication process for dealing with sexual misconduct allegations by CSS should be modeled after the adjudication process for anti-doping cases administered by the USADA which included a PDH process. See Exhibit C-80 at ¶11. Some of this tracks the closing argument and reasoning presented by Claimants. *See Day 3 Transcript*, Final Arguments at pgs. 251-260. Because the "opportunity to be heard" wording did not tract the exact "opportunity for a hearing . . . before declaring such individual ineligible to participate" wording in Section 220522(a)(8), this discrepancy could easily be resolved in Claimants' favor by principles of statutory construction. *See United States v. Banker*, 876 F.3d 530 (4th Cir. 2017) (recognizing that the Court should interpret statutes in *pari materia*, in a consistent manner in which adjacent statutory subsections that refer to the same subject matter are read harmoniously to ensure that a statutory scheme is coherent and consistent). Respondent's expert, Mr. Benz, did disagree and would apply principles of statutory construction to justify the CSS dispute resolution process without a PDH and because his legal interpretation only applies Section 200522(a)(8) due process protections to non-SafeSport cases. *Day 3 Transcript*, Testimony of Benz at pgs. 52-55, 196-197. The passage of

Section 220541(a)(1)(H) by Congress under the Ted Stevens 2020 Amendment made it clear that Congress wanted the "procedural due process" right of an accused protected by CSS. Section 220522(a)(8) was the only other provision in the Ted Stevens Act that provided a clear "procedural due process" right to an accused, specifically a pre-determination hearing before the accused can be declared ineligible to participate in an Olympic event. Again, the discrepancy in wording of one of the minimal procedural due process rights identified under Section 220541(a)(1)(H)(iii) as "an opportunity to be heard during the investigation" could also easily be resolved in Claimants' favor by principles of statutory construction. *See U.S. v Barker* cited above. Mr. Benz also disagrees with this possible application of statutory construction and would still interprets the 2020 change to justify the CSS dispute resolution process without a PDH. *Day 3 Transcript*, Testimony of Benz at pgs. 55-57.

Finally, the Panel will not repeat why it continues to believe that Claimants case is supported by the provisions or procedural protections under the umbrella of the Olympic Charter or International Olympic Committee's Safeguard Framework discussed at length in the Panel's Order dated July 11, 2020. *See* Exhibit C-108. Mr. Benz best explanation of why the IOC requirement that "any decision shall be grounded in and respect the principles of due process, including, in particular, the right to be heard and the right to appeal" set forth the current version of the IOC Basic Universal Principles of Good Governance of the Olympic and Sports Movement do not provide clear support for Claimants position is based upon his belief that "[d]ue [p]rocess means different things to different [people]." *See* Exhibit R-140; *Day 3 Transcript*, Testimony of Benz at pgs. 100-102. In explaining why the due process protections set forth in Subsection 12 of the Athletes' Rights and Responsibilities Declaration do not support Claimants position, Mr. Benz stated "it suffers from the same process of a lack of definition . . . a lack of context of what [d]ue [p]rocess means in a document that is operative in both English and French." *See* Exhibit 143; *Day 3 Transcript*, Testimony of Benz at pgs. 103-104. Due to issues with displaying Exhibit C-112 during the video conference, Mr. Benz was not able to provide the Panel with an analysis or explanation for the PDH process set forth in Article 163.8 of the 1/1/20 FEI General Regulations. *See Day 3 Transcript*, Testimony of Benz at pgs. 153-161. We continue to agree that many of these protections, although some may only be aspirational, provide guidance and support to Claimants' argument and ability to prevail in federal court regarding the procedural due process issue in this case. *See* Exhibits C-108, C-112, R-140, R-143; *Day 3 Transcript*, Testimony of

Benz at pgs. 77-78, 82-88, 100-104.

Despite the Larry Nasser incident tarnishing the U.S. Olympic movement and the USOPC, Congress has refused to amend, clarify or remove the procedural due process protections afforded to an accused Olympic participant since the 1978 enactment of §391(b)(6) - currently Section 220522(a)(8) of the Ted Stevens Act. The USOPC and CSS efforts to diminish or minimize this right to procedural due process has been set up for a rebuke by a federal court since the passage and implementation of the original version of the SafeSport Code in 2017. This is exactly what Ms. Keating warned everyone on the elite working group would potentially happen back in 2015. The Panel agrees with Ms. Keating that this unfortunate result is a viable reality that may just be waiting to happen. Mr. Benz also agrees that the only proper forum to address this issue would be a federal court, whenever it finally gets there. *Day 3 Transcript,* Testimony of Benz at pgs. 202-223. In the meantime, hundreds of accused Olympic participants may continue to be inappropriately deprived of a legal right to a PDH in their cases.

2. Did Respondent error in determining that Respondent did not have jurisdiction to address whether Section 220522(a)(8) and potentially Section 220541(a)(1)(H) of the Ted Stevens Act require a hearing before a decision by SafeSport may be enforced by Respondent depriving Claimants of their right to participate in the Olympic sport of equestrian? The answer to this second question is no, the Respondent did not error in determining that Respondent did not have jurisdiction at this time. The reasons for the Panel's ruling of no error are set forth below.

The Panel recognizes from the record that Claimants have been using their best efforts to obtain a definitive ruling on the first issue in this case for nearly four years. It is not as though Claimants have failed to ask that this procedural due process issue be addressed by seeking *Callaghan* motions before CSS, the JAMS arbitrators in their cases, or a hearing before Respondent. As Respondent clearly points out, jurisdiction to review and definitively address this procedural due process issue does require and exhaustion of available administrative remedies. At the final hearing, Respondent argued that Claimants must exhaust all available administrative remedies before invoking the jurisdiction of a federal court or the Respondent's potential jurisdiction to address Claimants' Section 220522(a)(8) and Section 220541(a)(1)(H) claim. *Day 3 Transcript,*

Final Arguments at pg. 277. Respondent asserts that the failure to appeal the JAMS PDA decisions to federal court under the FAA constitutes a failure to exhaust the final administrative remedy available under the CSS disciplinary proceeding process and precludes raising the same Section 220522(a)(8) and Section 220541(a)(1)(H) issue anew when their final decisions were sent to Respondent for enforcement. *Id.* at pgs. 277-281; *See Day 3 Transcript,* Testimony of Benz at pgs. 202-217. Effectively, Respondent asserts that Claimants had the right to go directly to federal court once the JAMS PDA decisions were issued and obtain an affirmative ruling by the federal court regarding the validity of their procedural claim that CSS violated their Section 220522(a)(8) and Section 220541(a)(1)(H) rights. *Id.* Mr. Benz also agreed with this argument that Claimants had the opportunity to go directly to federal court after their JAMS PDA appeal decisions were issued in their cases. *Day 3 Transcript,* Testimony of Benz at pgs. 118-125, 228-232. One JAMS PHA arbitrator also suggested that Claimants pursue a FAA appeal of the JAMS arbitration decision. *Day 3 Transcript*, Final Arguments at pgs. 246-247. Claimants counter that the JAMS PDH decision is final and binding with no right to appeal under the SafeSport rules and/or that the narrow scope of a federal court appeal set forth in the FAA does not allow a review of a JAMS PDA decision in any SafeSport case. *Day 3 Transcript*, Final Arguments at pgs. 242, 248-249. Unfortunately, whether Claimants position is correct has never been tested in court. Judge Chappell in the *Callaghan* case was asked to test the validity of the CSS adjudicative process but procedurally remanded the matter and never addressed the due process issues presented. *See* Exhibit C-90 at pgs. 7-11.

This Panel agrees with Respondent that Claimant must first exhaust its available administrative remedies before it can ask Respondent to seek a federal court review of its procedural due process claim. The unanswered federal question is: when Claimants completed the CSS administrative review process by obtaining decisions in their JAMS PDA appeals, were Claimants then required to seek a federal court review of the CSS adjudicative process and a ruling that directly addressed their procedural due process claim against CSS? No federal court precedent or ruling is currently known to exist that answers this specific legal question for the Panel. It was not necessary that the federal court agree with Respondent that it had jurisdiction to address Claimants' procedural due process claim. It was only necessary that this jurisdictional requirement be exhausted before moving to the next administrative forum to seek the review of Claimants' procedural due process

claim. If a federal court ruling already existed as precedent or a federal court established precedent by ruling on whether it had jurisdiction to address Claimants' procedural due process issue, then Claimants would have exhausted all available avenues to seek a procedural due process review and remedy under the CSS and SafeSport adjudication process. At that point, if the federal court denied jurisdiction to review Claimants' procedural due process claim, the next available forum to jurisdictionally seek such a review would have been before Respondent when CSS sent the Final Decision for enforcement by Respondent. The Panel agrees that, only under those circumstances, would Respondent have jurisdiction to address Claimants' procedural due process issue. Unfortunately, Claimants did not seek a ruling from a federal court after obtaining decisions in their JAMS PDA appeals. Claimants sought a *Callaghan* ruling is several of their JAMS PDAs, and set up this procedural due process issue for a FAA appeal, or related proceeding in federal court, to challenge the legality of the CSS procedural adjudicative system. *See* Exhibits C-137 at pgs. 13-30, R-58 at pg. 2, R-90 at pg. 3, R-116, R-119 pg. 2. The Panel agrees with Respondent that this constitutes a failure by Claimants to exhaust its duty to protect USEF member rights to a procedural due process PDH hearing by seeking a declaratory judgement in federal court would only arise once jurisdiction over this issue was properly established to exist before Respondent. Despite Claimants best argument, jurisdiction was not established to exist in this case. *See Day 3 Transcript*, Final Arguments at pgs. 248-251. However, the Panel's analysis and reasoning should assist Respondent in the future if it is required to address whether jurisdiction exists in another case. If another USEF member has properly exhausted all the available remedies within the CSS and SafeSport adjudication process, then jurisdiction could legally exist before Respondent to fulfill its duty to protect the USEF member's right to a procedural due process PDH hearing by seeking a declaratory judgement ruling in federal court. Or, as Claimants point out, Respondent and the USOPC could take a proactive approach by addressing the issue directly with CSS or by seeking a declaratory judgment ruling in federal court without waiting until an NGB is ordered to do so by the USOPC or a subsequent Section 10 arbitration panel. *See Day 3 Transcript*, Final Arguments at pg. 262.

3. Did the USOPC Hearing Panel error in determining that, under a Section 10 appeal, the USOPC did not have jurisdiction to address whether Respondent erred in determining

that Respondent did not have jurisdiction to address whether Section 220522(a)(8) and potentially Section 220541(a)(1)(H) of the Ted Stevens Act require a hearing before a decision by SafeSport may be enforced by Respondent depriving Claimants of their right to participate in the Olympic sport of equestrian? The answer to this third question is no. The reasons for the Panel's ruling are set forth below.

The USOPC Hearing Panel refused to consider several contentions raised by Claimants in their Section 10 proceeding. *See* Exhibit R-1 at ¶¶23-25, 44, 53. As referenced by the USOPC Hearing Panel, it only has limited authority and jurisdiction to review any appeal of an NGB ruling under a Section 10 appeal. Exhibit R-1 at ¶¶53, 59, 61 and 62. If Respondent had erred in denying Claimants jurisdiction in this case, Claimants were required to properly raise this issue before the USOPC Hearing Panel in their Section 10 appeal. *See* Exhibit R-1 at ¶25. Even then, the USOPC Hearing Panel would be limited to remanding the case back to Respondent to implement corrective measures, place Respondent on probation, or suspending/revoking its recognition as an NGB. *Day 3 Transcript*, Final Arguments at pgs. 267-268 and 275. However, because the USOPC Hearing Panel determined that Claimants failed to properly present this issue for review in their Section 10 appeal, the Hearing Panel was not required to address this contention. The Panel also agrees that since Respondent did not err in denying jurisdiction in this case, the USOPC decision not to consider other matters in the Claimant's Section 10 appeal is now moot.

4. Should Respondent be awarded sanctions against the Claimants represented by Mr. Romm and Mr. Silvey because of the delays and failures to comply with discovery and other deadlines ordered by this Panel? For the reasons set forth below, the Panel decides not to award Respondent sanctions against the Claimants represented by Mr. Romm and Mr. Silvey.

This Panel agrees with Respondent that Mr. Romm may have delayed this case for up to a year due to his constant requests for continuances, failures to be prepared for hearings, failures to comply with motion deadlines, failures to timely respond to discovery requests, failures to comply with Panel orders, and other indiscretions identified by Respondent. *See* Respondent's Request for Sanctions dated 11/27/23. We balance those failures with Mr. Romm's health issues, pro bono status, and his agreement to obtain Mr. Silvey as co-counsel for his clients so that the

case could finally move forward to conclusion in 2023. *See* Claimant's Response to USEF's Renewed Request for Sanctions dated 11/28/23. The Panel also balances the overall economic reality for Claimants in this attempt to pursue their claim in multiple forums for nearly four years and the financial disparity between parties. Although the circumstances may warrant the potential issuance of sanctions to Respondent based upon the serious delays, discovery violations and other failures to comply with orders issued by this Panel, the award of sanctions is left to the discretion of the Panel. *See* AAA Commercial Arbitration Rule R-60(a) (effective 9/1/22). We do not condone the failures of Mr. Romm in this case. However, in our discretion, we will not add the further burden of sanctions upon Mr. Romm's clients for his failures in this case.

All other pending matters or arguments that have not been directly addressed by this Decision and Award of the Panel are deemed denied or moot at this time. The administrative fees and expenses of the American Arbitration Association shall be borne as incurred, and the compensation and expenses of the arbitrators shall be borne as incurred.

THIS DECISION AND AWARD IS NOW ENTERED BY THE PANEL.

Dated: December 27, 2023.

_/s/ Timothy L. Garcia_
Hon. Timothy L. Garcia, Panel Chair

_/s/ X. M. Frascogna Jr._
X. M. "Mike" Frascogna Jr. Esq., Panel Member

_/s/ Kelvin Smith_
Kelvin Smith Esq., Panel Member