IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
January 15, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
      DEPUTY CLERK

| | | |
|---|---|---|
| Thomas Navarro, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:24-cv-00030 |
| | ) | |
| United States Center for SafeSport, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiffs Thomas Navarro, James Giorgio, and Nina Shaffer were suspended or permanently banned from participating in United States Equestrian Federation, Inc. ("USEF") events based on eligibility decisions issued by the United States Center for SafeSport ("SafeSport"). Plaintiffs brought this lawsuit against SafeSport, USEF, and the United States Olympic & Paralympic Committee ("USOPC") to challenge the procedures SafeSport applied in their cases. They allege that the policies and statutory framework governing SafeSport adjudications violate the United States Constitution, the Ted Stevens Olympic and Amateur Sports Act ("Amateur Sports Act"), and Virginia common law. Plaintiffs seek declaratory and injunctive relief that would vacate SafeSport's eligibility decisions in their cases.

This matter is before the court on motions to dismiss filed by each Defendant (Dkts. 29, 30, 33). Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(1) for

lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim. For the reasons outlined below, the court will grant Defendants' motions.

## I.    Background

The facts in this section are taken from Plaintiffs' complaint and supporting exhibits and are accepted as true when resolving the motions to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). The court also considers certain exhibits Defendants attached to their motions because they are integral to the complaint and Plaintiffs do not dispute their authenticity. *See Goines*, 822 F.3d at 166.

### A. Overview of the U.S. Olympic Movement and SafeSport's Functions

The Amateur Sports Act[1] governs the United States' participation in the Olympic and Paralympic movement. Under the Act, USOPC, a federally chartered corporation, is responsible for overseeing and promoting amateur athletic programs and other matters related to the United States' representation in the Olympic and Paralympic Games. 36 U.S.C. §§ 220502(a), 220503; (Compl. ¶ 27 (Dkt. 1)).

The Amateur Sports Act requires USOPC to designate one National Governing Body ("NGB") for each Olympic sport. 36 U.S.C. § 220521(a); (*see* Compl. ¶ 29). USEF is the NGB for equestrian sports. (*See* Compl. ¶ 31.) It has approximately 150,000 members, including horse trainers, amateur riders, non-riding participants, and fans of the sport. (*See id.* ¶ 28.) NGBs have broad autonomy to govern amateur competitions in their respective

---

[1] As discussed below, Congress has amended the Amateur Sports Act multiple times since its initial passage. The court uses "Amateur Sports Act" as a shorthand for the entire statutory framework.

sports, as well as the selection of Olympic and Paralympic teams, coaches, and staff. *See* 36 U.S.C. §§ 220522, 220523.

The Amateur Sports Act enumerates eligibility criteria that an amateur sports organization must satisfy to serve as an NGB. *See id.* § 220522. One criterion requires that NGBs provide "fair notice and opportunity for a hearing to any amateur athlete, coach, trainer, manager, administrator, or official before declaring the individual ineligible to participate" in amateur athletic competition. *Id.* § 220522(8)[2]; (*see* Compl. ¶ 29).

Historically, USEF and other NGBs were responsible for policing emotional, physical, and sexual abuse in their respective sports. (Compl. ¶ 31.) Between 2014 and 2017, USOPC began developing a more centralized approach for responding to reports of abuse in amateur sports. (*See id.* ¶¶ 33, 37, 42–46.) USOPC formed SafeSport to manage investigations and enforcement in this area. (*See id.*) As a first step, USOPC worked with NGBs to develop the SafeSport Code, which governs the complaint, investigation, and adjudication processes for claims of emotional, physical, and sexual abuse across the Olympic and Paralympic movement. (*Id.* ¶ 37.) Around March 2017, USOPC, SafeSport, and the NGBs (including USEF) entered into a Master Services Agreement that delegated to SafeSport all responsibility for adjudicating alleged violations of the SafeSport Code. (*Id.* ¶¶ 62–65.)

The SafeSport Code went into effect in March 2017. (*Id.* ¶ 42.) At first, SafeSport remained under the jurisdiction of USOPC, and USOPC required all NGBs to adopt the

---

[2] Prior to 2020, this provision was found at 36 U.S.C. § 220522(a)(8). Congress reorganized the Amateur Sports Act in 2020 but did not change the relevant language of the provision. *See* Empowering Olympic, Paralympic, and Amateur Athletes Act of 2020, Pub. L. 116-189, 134 Stat. 943, 956–57 (2020); (Compl. ¶ 29).

SafeSport Code.  (*Id.* ¶ 42.)  The Code gave SafeSport exclusive authority to investigate and resolve allegations of sexual misconduct.  (*Id.* ¶ 45.)  It also allowed SafeSport to accept authority over other alleged violations of the Code upon request from USOPC or an NGB. (*Id.* ¶ 46.)  That discretionary authority covered allegations of emotional or physical misconduct, including bullying, hazing, and harassment.  (*Id.*)  If USOPC and the NGB did not ask SafeSport to accept authority over such allegations, the NGB would investigate them under its own rules.  (*Id.*)

In early 2018, Congress enacted the Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act (the "2018 Amendment"), which amended the Amateur Sports Act to codify SafeSport's roles and responsibilities.  (*Id.* ¶ 53); *see* Pub. L. No. 115-126, 132 Stat. 318, 320–24 (2018).  The 2018 Amendment designated SafeSport as "the independent national safe sport organization for the United States."  132 Stat. at 320; (Compl. ¶¶ 53–54).  It provided that SafeSport would "exercise jurisdiction over the [USOPC], each [NGB], and each paralympic sports organization with regard to safeguarding amateur athletes against abuse, including emotional, physical, and sexual abuse, in sports." 132 Stat. at 320; (Compl. ¶ 54).  The 2018 Amendment also outlined SafeSport's functions and responsibilities.  Among other duties, SafeSport must "maintain an office for response and resolution that shall establish mechanisms that allow for the reporting, investigation, and resolution . . . of alleged sexual abuse in violation of [SafeSport's] policies and procedures." 132 Stat. at 321; (Compl. ¶ 55).  The 2018 Amendment required SafeSport to ensure that its mechanisms for resolving reports of abuse "provide fair notice and an opportunity to be heard."  132 Stat. at 321; (Compl. ¶ 59).  But unlike the section of the Amateur Sports Act

governing NGBs, the new provisions did not expressly require SafeSport to hold a hearing before issuing an eligibility decision. *See* 132 Stat. at 320–24; (Compl. ¶ 59).

Congress made further changes to the Amateur Sports Act in the Empowering Olympic, Paralympic, and Amateur Athletes Act of 2020 (the "2020 Amendment"). Pub. L. 116-189, 134 Stat. 943 (2020); (*see* Compl. ¶ 67). The 2020 Amendment added language requiring that SafeSport "ensure that any action taken by the Center against an individual under the jurisdiction of the Center, including an investigation, the imposition of sanctions, and any other disciplinary action, is carried out in a manner that provides procedural due process to the individual." 134 Stat. at 961; (*see* Compl. ¶ 68). It then listed the "minimum" forms of process that SafeSport must provide, which include "an opportunity to be heard during the investigation." 134 Stat. at 961. But it did not add an express requirement for SafeSport to hold a pre-determination hearing before making eligibility decisions. The 2020 Amendment also prohibited USOPC and NGBs from interfering with or attempting to influence SafeSport's investigations. *Id.* at 962.

### B. Plaintiffs' SafeSport Cases

Plaintiffs Thomas Navarro, James Giorgio, and Nina Shaffer are professional horse trainers or breeders and members of USEF. (Compl. ¶¶ 4–6, 12, 15, 22.) To become a member of USEF, a person must sign a membership agreement that requires them to accept the terms of the SafeSport Code. (*Id.* ¶ 178.)

#### 1. <u>Giorgio and Navarro</u>

SafeSport issued decisions declaring Giorgio and Navarro permanently ineligible to participate in USEF events in July 2018 and December 2018, respectively. (SafeSport Sealed

Ex. D, U.S. Center for SafeSport Arbitration Hearing Decision for James Giorgio at 1 (Dkt. 34-9) [hereinafter "Giorgio Arbitration Decision"]; SafeSport Sealed Ex. C, U.S. Center for SafeSport Arbitration Hearing Decision for Thomas Navarro at 1 (Dkt. 34-8) [hereinafter "Navarro Arbitration Decision"].)[3]  As required by the Amateur Sports Act, SafeSport then published their names on an online list of adults barred from competition.  *See* 36 U.S.C. § 220541(a)(1)(G); (Compl. ¶¶ 14, 18).

Giorgio and Navarro's SafeSport cases were governed by the version of the SafeSport Code that went into effect on March 21, 2018.  (*See* USOPC Ex. 1, 2018 SafeSport Code at 3 (Dkt. 29-2).)[4]  That version of the Code did not give respondents an opportunity for a hearing before SafeSport's Director of Investigations issued eligibility decisions.  (2018 SafeSport Code at 19–20; *see* Compl. ¶¶ 47–48.)  Instead, after the Director made a decision, the respondent could request a hearing before a neutral arbitrator to challenge it.  (2018 SafeSport Code at 21.)  Neither Giorgio nor Navarro received notice or a hearing before SafeSport ruled them permanently ineligible to participate in USEF events in 2018.  (Compl. ¶¶ 14, 18.)

The Code also established the rules for arbitration proceedings.  (*See* 2018 SafeSport Code at 25–37.)  Under those rules, a respondent who wished to arbitrate the Director's decision had to pay an arbitration fee of $5,200 or request a hardship exemption.  (*Id.* at 38;

---

[3] The court may consider these exhibits at the motion-to-dismiss stage because they are integral to Plaintiffs' complaint and Plaintiffs do not dispute their authenticity.  *See Goines*, 822 F.3d at 166.  SafeSport filed these two documents, as well as SafeSport's Notice of Decision in Shaffer's case (Dkt. 34-10), under seal.  The parties have conferred with the court and confirmed that this opinion does not cite any sensitive material from the three sealed documents.

[4] This document is also integral to Plaintiffs' complaint—which raises several challenges to the process the SafeSport Code provided—and Plaintiffs do not dispute its authenticity.  The same is true of the 2023 version of the SafeSport Code cited below.  The original pagination in the 2018 SafeSport Code is inconsistent, so this opinion cites to the document's Bates numbers.

*see* Compl. ¶ 48.)  And, importantly, the rules limited the types of claims a respondent could

raise during arbitration:

> Arbitration shall resolve only whether a Responding Party violated the
> SafeSport Code . . . and/or the appropriate sanction (if any).  Challenges to,
> or complaints about, any organizational practices or procedures shall not be
> addressed and the arbitrator shall be limited to evaluating whether a Covered
> Individual violated the Code, and, if so, the appropriate sanction.

(2018 SafeSport Code at 27; *see* Compl. ¶ 49.)  This provision barred respondents from

raising legal challenges to SafeSport's procedures during arbitration.  (Compl. ¶¶ 75–76.)

That said, the arbitrator did have "the power to rule on the arbitration body's jurisdiction,

including any objections with respect to the existence, scope or validity of the arbitration

agreement." (2018 SafeSport Code at 28.)  The rules provided that the arbitrator's decision

"shall be considered final and binding," and the respondent "waive[d], to the fullest extent

permissible by law, any right to challenge in court the arbitrator's decision." (*Id.* at 34.)

Giorgio and Navarro both requested arbitration after SafeSport issued the decisions

permanently banning them from USEF events.  (*See* Compl. ¶¶ 20, 78.)  In both cases,

arbitrators affiliated with JAMS upheld SafeSport's decisions.  (*See* Giorgio Arbitration

Decision at 1; Navarro Arbitration Decision at 12.)  During his arbitration proceedings,

Navarro filed a motion arguing that SafeSport's failure to provide a pre-determination

hearing violated the Amateur Sports Act.  (Compl. ¶ 78.)  The arbitrator concluded that he

lacked the authority or jurisdiction under the Code to address that issue.  (*Id.*)  Navarro also

argued that SafeSport's failure to provide a pre-determination hearing violated his due

process rights under the U.S. Constitution.  (*See* Navarro Arbitration Decision at 2.)  The

arbitrator did consider that argument, but he concluded that SafeSport was not a

governmental actor and thus was not subject to constitutional due process requirements. (*Id.*)  Giorgio did not attempt to raise any procedural claims during his JAMS arbitration; he only challenged the sanction SafeSport imposed (*See* Giorgio Arbitration Decision at 3–9.)

Navarro and Giorgio next attempted to challenge SafeSport's decisions by filing complaints with USEF and USOPC.  (*See* Compl. Ex. A, American Arbitration Association Commercial Arbitration Tribunal Final Decision at 5–6 (Dkt. 1-1) [hereinafter "AAA Panel Decision"]; Compl. ¶ 79.)[5]  They alleged that SafeSport's failure to offer a pre-determination hearing violated 36 U.S.C. § 220522(8), which mandates that NGBs provide "fair notice and opportunity for a hearing . . . before declaring [an] individual ineligible to participate." (Compl. ¶ 79.)   USEF and USOPC both held that they lacked jurisdiction to hear that argument.  (AAA Panel Decision at 6.)  Per USOPC's dispute resolution process, Giorgio and Navarro appealed the USOPC decision to a panel of three American Arbitration Association ("AAA") arbitrators.  (*Id.*; Compl. ¶¶ 79–80.)   In a decision issued in December 2023, the panel concluded that it, too, lacked jurisdiction over the statutory claim.  (AAA Panel Decision at 2, 18.)  It reasoned that the proper method of raising the claim was to file suit in federal court after exhausting all administrative remedies in the SafeSport arbitration process.  (*Id.* at 2.)

There is no indication that Giorgio or Navarro appealed either the JAMS arbitration decisions or the later AAA Panel decision to any federal or state court.

---

[5] USEF's bylaws permits members to file complaints with USEF to challenge the enforcement of a SafeSport decision. (AAA Panel Decision at 5.)  In addition, the Amateur Sports Act allows members of an NGB to "seek to compel the [NGB] to comply with sections 220522, 220524, and 220525 of this title by filing a written complaint with [USOPC]." 36 U.S.C. § 220527(a)(1).  Such claims are resolved under USOPC's dispute resolution policy, which includes proceedings before a USOPC hearing panel and, ultimately, an opportunity to appeal the hearing panel's decision to an AAA arbitration panel.  (*See* AAA Panel Decision at 6.)

2. <u>Shaffer</u>

In February 2024, SafeSport issued a decision suspending Shaffer from USEF events for three months, followed by a nine-month probation period.  (Compl. ¶ 24; SafeSport Sealed Ex. E, SafeSport Notice of Decision, *In re*: Nina Shaffer (Dkt. 34-10) [hereinafter "Shaffer Notice of Decision"].)  Shaffer's case was governed by the version of the SafeSport Code that went into effect in April 2023.  (*See* USOPC Ex. 2, 2023 SafeSport Code at 1 (Dkt. 29-3).)  The 2023 Code incorporated the 2020 Amendment's language requiring SafeSport to "provide procedural due process to the Respondent."  (*Id.* at 24); 36 U.S.C. § 2220541(a)(H).  But like the earlier version of the Code, the 2023 Code did not provide for a pre-determination hearing.  (*See* 2023 SafeSport Code at 21–26.)  The 2023 Code also amended the arbitration rules to remove the restrictions on hearing claims related to SafeSport's procedures.  (*See id.* at 29–31.)

Shaffer did not request an arbitration hearing because she could not afford the $5,200 arbitration fee.  (*See* Compl. ¶ 25.)  SafeSport's Notice of Decision informed her that she could request an arbitration hearing and pointed her to the sections of the SafeSport Code that discussed "waiver of fees in cases of financial hardship."  (Shaffer Notice of Decision at 7; *see* 2023 SafeSport Code at 39–40.)

**C. Procedural History**

On April 28, 2024, Plaintiffs filed suit in this court against SafeSport, USEF, and USOPC.  Their complaint alleges seven causes of action that raise constitutional, statutory, and state common-law challenges to SafeSport's adjudication procedures:

- ▪ **Count I** (against all Defendants): Alleges that the Amateur Sports Act unconstitutionally delegates legislative, executive, and judicial authority to SafeSport.

- **Count II** (against all Defendants): Alleges that SafeSport's method of appointing its directors violates the Appointments Clause in Article II, Section 2 of the U.S. Constitution.

- **Count III** (against USEF and USOPC): Alleges that USEF and USOPC violated the Amateur Sports Act by failing to ensure that SafeSport provides a pre-determination hearing to respondents.

- **Count IV** (against SafeSport): Alleges that SafeSport violated the Amateur Sports Act by failing to provide respondents with a pre-determination hearing.

- **Count V** (against all Defendants): Alternatively alleges the Amateur Sports Act, by failing to require SafeSport to hold pre-determination hearings, violates Plaintiffs' rights to due process under the Fifth Amendment.

- **Count VI** (against SafeSport): Alleges that SafeSport violated Plaintiffs' rights to due process under the Fifth Amendment by failing to provide a pre-determination hearing.

- **Count VII** (against USEF): Alleges that USEF's membership agreement, which requires members to agree to the SafeSport Code, is an unconscionable adhesion contract.

(*Id.* ¶¶ 82–185.)

Plaintiffs request declaratory and injunctive relief. (*Id.* at 37–39.) They ask the court to declare that SafeSport's procedures are unlawful and that the sanctions SafeSport imposed in their cases are void. (*Id.* at 37–38.) They also seek a permanent injunction prohibiting USEF from continuing to enforce the sanctions against them. (*Id.* at 39.)

Each Defendant separately moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkts. 29, 30, 33.) After the parties completed briefing, the court held a hearing on the motions on December 5, 2024. (Dkt. 52.)

## II.    Standard of Review

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction over a complaint.  *See* Fed. R. Civ. P. 12(b)(1).  A defendant may bring either a facial or factual challenge to subject matter jurisdiction.  *See Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017).  A facial challenge, which Defendants make here, "contend[s] that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (internal quotation marks omitted). "[T]he facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.*

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  To avoid dismissal, the plaintiff must allege more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" unsupported by "further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

When reviewing a Rule 12(b)(6) motion to dismiss, the court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).  In addition

to the facts alleged in the complaint, the court may examine documents attached to the complaint as exhibits or those explicitly incorporated into the complaint by reference. Fed. R. Civ. P. 10(c); *see Goines*, 822 F.3d at 166. It also may consider documents submitted by the defendant if they are "integral to the complaint" and the plaintiff does not dispute their authenticity. *Goines*, 822 F.3d at 166.

### III.    Analysis

#### A. Subject Matter Jurisdiction

Defendants raise two threshold challenges to the court's subject matter jurisdiction. First, USOPC argues that Plaintiffs lack Article III standing to sue USOPC. Second, SafeSport and USEF argue that the Amateur Sports Act deprives the court of jurisdiction over Plaintiffs' claims. The court concludes that Plaintiffs have not established standing to sue USOPC and will dismiss the claims against USOPC for lack of subject matter jurisdiction. The court finds, however, the Amateur Sports Act, as amended in 2018 and 2020, does not eliminate the court's subject matter jurisdiction over Plaintiffs' claims against SafeSport and USEF.

#### 1.    Article III Standing

Plaintiffs allege four claims against USOPC: that the Amateur Sports Act unconstitutionally delegates authority to SafeSport (Count I); that SafeSport's method of appointing directors violates the Appointments Clause (Count II); that USOPC and USEF violated the Amateur Sports Act by failing to require that SafeSport hold pre-determination hearings (Count III); and that the Amateur Sports Act violates Plaintiffs' rights to procedural due process (Count V). (*See* Compl. ¶¶ 82–118, 131–46.) USOPC argues that Plaintiffs lack

standing to bring those claims. (USOPC Br. in Supp. of Mot. to Dismiss at 14–19 (Dkt. 29-1) [hereinafter "USOPC Br."].)

The court may exercise subject matter jurisdiction over the claims against USOPC only if Plaintiffs satisfy the constitutional requirements for Article III standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs bear the burden of establishing standing and must show "(1) an injury in fact; (2) a causal connection between the injury and the conduct complained of, such that the injury is fairly traceable to [USOPC's] actions; and (3) a likelihood that the injury will be redressed by a favorable decision." *Ali v. Hogan*, 26 F.4th 587, 596 (4th Cir. 2022) (citing *Lujan*, 504 U.S. at 560–61). "[T]he standing inquiry must be evaluated separately as to each defendant." *Disability Rights S.C. v. McMaster*, 24 F.4th 893, 900 (4th Cir. 2022).

USOPC argues that Plaintiffs fail to show either causation or redressability. To satisfy the causation element, Plaintiffs must allege that their injuries were fairly traceable to USOPC's alleged conduct. *E.g.*, *DiCocco v. Garland*, 52 F.4th 588, 592 (4th Cir. 2022). While USOPC's "conduct need not be the last link in the causal chain," Plaintiffs "must be able to demonstrate that the alleged harm was caused by [USOPC], as opposed to the independent action of some third party not before the court." *Disability Rights S.C.*, 24 F.4th at 901 (internal quotation marks omitted).

Plaintiffs have not alleged any injuries that are fairly traceable to USOPC. They do not allege that USOPC played any role in issuing the eligibility decisions or imposing the sanctions in their cases. To the contrary, they acknowledge that SafeSport made the decisions and that USEF enforced them. (*See* Compl. ¶¶ 13, 17, 19, 24–25.) Further, they

recognize that the 2018 Amendment to the Amateur Sports Act "made Defendant SafeSport independent from Defendant USOPC." (*Id.* ¶ 53.)  Plaintiffs all were sanctioned after that amendment went into effect.  Their complaint notes that USOPC provides funding to SafeSport, (*id.* ¶ 100), but it does not identify any connection between that funding and SafeSport's eligibility decisions.  And while Plaintiffs make a conclusory statement that USOPC is "enforcing" SafeSport's decisions, (*id.* ¶ 118), they do not identify any specific enforcement role that USOPC plays.[6]  *See Disability Rights S.C.*, 24 F.4th at 901 (recognizing the "the long-standing rule that a plaintiff may not sue a state official who is without any power to enforce the complained-of statute" (quoting *Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (en banc))).

Plaintiffs do allege that USOPC failed to ensure compliance with the statutory requirement that NGBs provide "fair notice and opportunity for a hearing . . . before declaring [a member] ineligible to participate." (Compl. ¶ 117); *see* 36 U.S.C. § 220522(8).  They claim that USOPC "directed [NGBs] not to fulfill those requirements, and or [sic] assisted them in avoiding them" by deliberately omitting a pre-determination hearing from the original SafeSport Code.[7]  (Compl. ¶ 117; *see id.* ¶¶ 38–41.)  But USOPC's role in drafting

---

[6] At the motions hearing, Plaintiffs' counsel suggested that USOPC enforced SafeSport's eligibility decisions by reviewing Giorgio and Navarro's complaints against USEF (which ultimately resulted in the AAA Panel Decision).  (Tr. of Dec. 4, 2024 Mots. Hr'g at 42:13–43:17.)  USOPC's role in reviewing their complaints does not establish that USOPC caused Giorgio or Navarro's alleged injuries.  Those injuries were complete well before Giorgio and Navarro filed the complaint with USOPC, and Giorgio and Navarro do not allege any claims related to USOPC's conduct in reviewing the complaint.  The court thus cannot conclude that their alleged injuries were fairly traceable to USOPC's dispute resolution process.  It is also worth noting that neither the USOPC hearing panel nor the AAA arbitration panel even addressed the merits of SafeSport's decisions—both held that they lacked jurisdiction to review the claims.  (*See* AAA Panel Decision at 2, 6.)

[7] The AAA Panel Decision provides some relevant background on the drafting history of the SafeSport Code.  It notes that USOPC officials, when drafting the Code, circulated a draft version that did not provide for notice and a hearing before SafeSport issued a "Final Decision" on a member's eligibility, and instead only allowed a respondent to appeal a

- 14 -

the original SafeSport Code is too attenuated from Plaintiffs' injuries to support an inference

of causation.  Any authority USOPC exercised over SafeSport's operations ended with the

2018 Amendment, which made SafeSport a formal independent entity separate and apart

from USOPC.  That amendment empowered SafeSport to exercise jurisdiction *over* USOPC

and each NGB "with regard to safeguarding amateur athletes against abuse."  36 U.S.C.

§ 220541(a)(1)(B).  It also gave SafeSport the independent authority to develop (and revise)

its policies and procedures, including the Code.  *See id.* § 220541(a)(1)(C), (D).  Plaintiffs do

not explain how USOPC could have required SafeSport to hold pre-determination hearings

in their cases, and, at least at the time of Shaffer's case, the Amateur Sports Act expressly

prohibited USOPC from interfering in or attempting to influence the outcome of SafeSport

investigations.  *Id.* § 220541(f)(4)(A).

Plaintiffs also suggest the court has subject matter jurisdiction because they are

seeking declaratory relief and USOPC has "an interest in the determination of the issues of

whether they are bound by the SafeSport Code as a matter of federal law."  (*See* Pls.' Am.

Resp. in Opp'n to Defs.' Mots. to Dismiss at 6–7 (Dkt. 45) [hereinafter "Pls.' Resp."].)  But a

plaintiff in a declaratory judgment action is not excused from Article III standing

requirements.[8]  *See, e.g., S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands,*

---

Final Decision to an arbitrator at the respondent's expense.  (*See* AAA Panel Decision at 8–10; Compl. ¶¶ 39–41.)  When discussing the draft, USEF's general counsel raised concerns that this approach might conflict with the statutory requirement that NGBs provide a pre-determination hearing.  (AAA Panel Decision at 8–10; Compl. ¶ 40.)  Nonetheless, the SafeSport Code did not provide for a pre-determination hearing when it was adopted in 2017.  (*See* AAA Panel Decision at 10.)

[8] Plaintiffs also ask the court to exercise its statutory discretion to hear their claims for declaratory relief.  (Pls.' Resp. at 7–8.)  But that discretion comes into play only when the declaratory action first satisfies the constitutional requirements for subject matter jurisdiction.  *See* 28 U.S.C. § 2201(a); *Mitcheson v. Harris*, 955 F.2d 235, 237 (4th Cir. 1992).

*LLC*, 713 F.3d 175, 181–83 (4th Cir. 2013); *Patrick v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 860 F. App.'x 828, 831–32 (4th Cir. 2021).

Because Plaintiffs have not established Article III standing to sue USOPC, the court will dismiss the claims against USOPC for lack of subject matter jurisdiction. And even if Plaintiffs had standing, their claims against USOPC would be subject to dismissal under Rule 12(b)(6) for the reasons discussed in Sections III.B. and III.D below.

### 2.   Effect of Amateur Sports Act

SafeSport argues that the Amateur Sports Act prohibits the court from exercising subject matter jurisdiction over any of Plaintiffs' claims. (SafeSport's Mem. in Supp. of Mot. to Dismiss at 14–15 (Dkt. 34) [hereinafter "SafeSport Mem."].) According to SafeSport, the Act eliminates courts' jurisdiction to hear claims that challenge its eligibility decisions or the procedures it follows when making them. (*Id.*)

As SafeSport points out, a few courts have held that the Amateur Sports Act "preempts" courts from exercising subject matter jurisdiction over "state-law causes of action that essentially seek relief based on the athlete's eligibility." *Sanderson v. U.S. Ctr. for SafeSport, Inc.*, No. 21-cv-01771, 2021 WL 3206322, at *4 (D. Colo. July 29, 2021) (holding that the Act preempted state-law breach-of-contract and retaliation claims against SafeSport because the claims went "to the heart of [plaintiff's] eligibility to compete in the Olympics"); *see also Slaney v. Int'l Amateur Athletics Fed'n*, 244 F.3d 580, 594–96 (7th Cir. 2001) (holding that the Act preempted state-law breach-of-contract and tort claims arising from a USOPC eligibility determination); *Pliuskaitis v. USA Swimming, Inc.*, 243 F. Supp. 3d 1217, 1226–27 (D. Utah 2017) (holding that the Act preempted claims that "sound[ed] in state law and

challenge[d] USA Swimming's determination regarding Plaintiff's eligibility to coach"), *aff'd*, 720 F. App'x 481 (10th Cir. 2018); *Graham v. U.S. Anti-Doping Agency*, No. 5:10-CV-194-F, 2011 WL 1261321, at *5–6 (E.D.N.C. Mar. 31, 2011) (holding that the Act precluded subject matter jurisdiction over *pro se* plaintiff's federal constitutional claims that "essentially s[ought] to challenge his eligibility to coach amateur Olympic athletes" as determined by the U.S. Anti-Doping Agency). Some of these courts have held that the Act also bars procedural challenges to eligibility decisions. *See Slaney*, 244 F.3d at 596; *Sanderson*, 2021 WL 3206322, at *4.[9]

In construing the Act to preclude subject matter jurisdiction over such claims, these courts relied on statutory language that authorizes USOPC to exercise "exclusive jurisdiction . . . over all matters pertaining to United States participation in the Olympic Games." 36 U.S.C. § 220503(3)(A); *see, e.g.*, *Slaney*, 244 F.3d at 594–95; *Sanderson*, 2021 WL 3206322, at *3–4. But even assuming this language limits courts' jurisdiction over certain eligibility disputes within the Olympic movement, it does not follow that it has the same effect in cases arising from *SafeSport's* eligibility decisions. The 2018 Amendment made SafeSport independent of USOPC and empowered SafeSport to "exercise jurisdiction *over*" USOPC and NGBs on matters related to abuse prevention. 36 U.S.C. § 220541(a)(1)(B) (emphasis added). In other words, the amendment established a role for SafeSport outside of the "exclusive jurisdiction" USOPC otherwise exercises in this area. Because SafeSport operates independently, § 220503(3)(A)'s language concerning USOPC's jurisdiction does not limit the

---

[9] These courts have recognized a "limited exception" to the general restriction on subject matter jurisdiction. *See, e.g.*, *Slaney*, 244 F.3d at 595–96. Under that exception, claims are not preempted when they allege that the decision-making body "clearly breached its own rules, that breach will imminently result in *serious* and irreparable harm to the plaintiff, and the plaintiff has exhausted all internal remedies." *Id.* (emphasis in original).

court's jurisdiction over claims related to SafeSport's decisions.  Only one court has held

otherwise, and, with great respect to that court's analysis, it did not consider the effect of the

2018 Amendment.  *See Sanderson*, 2021 WL 3206322, at *3–4.

The question, then, is whether any other provisions of the Amateur Sports Act

prohibit the court from exercising subject matter jurisdiction over claims challenging

SafeSport decisions.  It is well-established that a "rule is jurisdictional only '[i]f the

Legislature *clearly states* that [it] shall count as jurisdictional.'"  *Stokes v. Stirling*, 64 F.4th 131,

139 (4th Cir. 2023) (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 146 (2012)) (emphasis in

original); *see Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515–16 (2006) (same).  The parts of the

Amateur Sports Act that address SafeSport say nothing about divesting federal courts of

jurisdiction to hear certain claims.  They merely state that SafeSport shall "exercise

jurisdiction over [USOPC] and each [NGB] with regard to safeguarding amateur athletes

against abuse, including emotional, physical, and sexual abuse, in sports."  36 U.S.C.

§ 220541(a)(1)(B).  That is not a clear statement prohibiting courts from hearing claims

arising from SafeSport's operations.

In fact, the Act expressly authorizes federal courts to hear such claims in some

circumstances.  Section 220541(d)(3) provides that "[a]ny civil action brought in a State court

against [SafeSport] relating to the responsibilities of [SafeSport] under this section, section

220542, or section 220543, shall be removed, on request by [SafeSport], to the district court

of the United States in the district in which the action was brought."  36 U.S.C.

§ 220541(d)(3).  It then states that "such district court shall have original jurisdiction over the

action without regard to the amount in controversy or the citizenship of the parties involved." *Id.*

SafeSport describes this provision as a narrow carve-out from the general rule prohibiting federal courts from exercising subject matter jurisdiction in these cases. (*See* Tr. of Dec. 5, 2024 Mots. Hr'g at 17:2–25.) But, again, SafeSport does not identify any textual basis for that supposed rule. While § 220541(d)(3) does not expressly speak to the court's original jurisdiction in non-removal cases, that silence does not suggest the court lacks jurisdiction in such cases. Instead, it only underscores that the statute does not contain any clear statement limiting the court's subject matter jurisdiction over claims arising from SafeSport decisions.

The 2020 Amendment did add two provisions to § 220541 clarifying that the Amateur Sports Act does not create a private right of action. One provides that SafeSport's statutory duties should not be construed "to give rise to a claim under State law or to create a private right of action." 134 Stat. at 961; 36 U.S.C. §§ 220541(a)(2)(C). The other states more broadly that "[n]othing in this chapter shall be construed to create a private right of action." 134 Stat. at 962; 36 U.S.C. § 220541(d)(3)(B); *see also* 36 U.S.C. § 220505(b)(9) (similarly stating that no "provision of this chapter shall create a private right of action under this chapter"). While this language limits a person's ability to seek remedies under the statute, it does not "speak in jurisdictional terms." *Stokes*, 64 F.4th at 139 (quoting *Gonzalez*, 565 U.S. at 143).

For these reasons, the court concludes that the Amateur Sports Act does not deprive it of subject matter jurisdiction over Plaintiffs' claims.

### B. Exhaustion of Administrative Remedies

Defendants next argue that Shaffer failed to exhaust her administrative remedies because she did not request arbitration after SafeSport issued the decision suspending her. (USOPC Br.. at 26–27; USEF's Am. Mem. in Supp. of Mot. to Dismiss at 20–22 (Dkt. 38) [hereinafter "USEF Mem."]; SafeSport Mem. at 12–14.)

The Amateur Sports Act does not contain an express exhaustion requirement, but at least two courts have held that plaintiffs must exhaust SafeSport's arbitration procedures before filing a civil complaint. *See Sanderson*, 2021 WL 3206322, at *5; *Callaghan v. U.S. Center for SafeSport*, No. 2:18-cv-336, 2018 WL 4107951, at *5–6 (M.D. Fla. Aug. 29, 2018). That position is compatible with the text of the Amateur Sports Act, which authorizes SafeSport to "utilize a neutral arbitration body and develop policies and procedures to resolve allegations of sexual abuse within its jurisdiction to determine the [eligibility] of any amateur athlete, coach, trainer, manager, administrator, or official who is the subject of such an allegation." 36 U.S.C. § 220541(c)(1); *see also Callaghan*, 2018 WL 4107951, at *5 ("The general purpose of an exhaustion requirement is so that a specialized entity may have the first opportunity to investigate and, if appropriate, negotiate a resolution."). As members of USEF, Plaintiffs agreed to abide by the SafeSport Code, including the arbitration rules. (Compl. ¶ 178). In any event, Plaintiffs do not dispute that the Act imposes some exhaustion requirement.

Here, Shaffer failed to exhaust her administrative remedies by never requesting that an arbitrator review SafeSport's suspension decision. Plaintiffs state that Shaffer could not afford the hefty arbitration fee. (Compl. ¶ 25.) But as Defendants point out, the SafeSport Code permitted respondents to apply for a "hardship exemption" to the fee. (*See* 2023

SafeSport Code at 39–40.)  Plaintiffs do not allege that Shaffer applied for that exemption, even though SafeSport's notice of its suspension decision informed her that respondents may request a waiver of the arbitration fee.  (*See* Shaffer Notice of Decision at 7.)  Other courts have concluded that plaintiffs failed to exhaust in very similar circumstances.  *See Sanderson*, 2021 WL 3206322, at *5 (noting in *dicta* that plaintiff had failed to exhaust administrative remedies for claims against SafeSport because he "did not pay the required arbitration deposit, ask for an extension, or seek a hardship exemption"); *Callaghan*, 2018 WL 4107951, at *6 (dismissing plaintiff's claims against SafeSport for failure to exhaust because plaintiff had not raised the claims in arbitration).

Accordingly, the court will dismiss Shaffer's remaining claims under Rule 12(b)(6).[10]

## C. *Res Judicata*

USEF and SafeSport argue that Navarro and Giorgio's claims are barred by *res judicata* because they raised (or could have raised) the claims during arbitration and did not seek judicial review of the arbitration decisions under the Federal Arbitration Act ("FAA"). (USEF Mem. at 22–23; SafeSport Mem. at 8–12.)

"Under the doctrine of res judicata, 'a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.'" *Andrews v. Daw*, 201 F.3d 521, 524 (4th Cir. 2000) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)).  For *res judicata* to attach, "a party must establish: (1) a final judgment on the merits in a prior suit,

---

[10] USEF argues that Giorgio and Navarro also failed to exhaust administrative remedies because they did not appeal the JAMS or AAA Panel decisions to a court under the Federal Arbitration Act.  (USEF Mem. at 23–24.)  The court will assume that both Giorgio and Navarro satisfied exhaustion requirements by participating in the JAMS and AAA arbitrations.  USEF does not point to any statutory scheme that treats a judicial complaint as a required administrative remedy.  Such a scheme would seem inconsistent with the purpose of administrative exhaustion requirements, which encourage plaintiffs to resolve disputes with non-judicial actors before turning to a court for relief.

(2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity

of parties or their privies in the two suits." *Id.* (quoting *Jones v. SEC*, 115 F.3d 1173, 1178

(4th Cir.1997)).  A defendant may raise a *res judicata* defense in a Rule 12(b)(6) motion, but

"only if it clearly appears on the face of the complaint." *Id.* at 524 n.1 (quoting *Richmond,

Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)).  The court may,

however, "take judicial notice of facts from a prior judicial proceeding when the res judicata

defense raises no disputed issue of fact." *Id.*

Here, the parties primarily dispute whether there is "an identity of the cause of

action" between their arbitrations and the instant lawsuit. *Id.* at 524.  That element "acts as a

bar not only to the specific legal claims that were actually raised in the first case, but also to

any legal claims that 'could have been raised' based on the same transaction or occurrence."

*Addison v. Volvo Trucks N. Am.*, No. 7:12-cv-00314, 2013 WL 1123857, at *3 (W.D. Va. Mar.

15, 2013) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).  Giorgio and Navarro's claims in

the arbitrations and this lawsuit arise from the same transaction or occurrence: SafeSport's

decisions banning them from participating in USEF events. *See Pliuskaitis*, 243 F. Supp. 3d at

1228 (holding that claims challenging an NGB's eligibility determination arose from same

transaction or occurrence as claims brought in post-determination arbitration).  Thus, the

question is whether Giorgio and Navarro raised—or could have raised—their challenges to

SafeSport's procedures during the JAMS arbitrations.

The undisputed record shows that Navarro raised one of his claims—a constitutional

due process challenge to SafeSport's procedures—during his JAMS arbitration.  (Navarro

Arbitration Decision at 2.)  The arbitrator's written decision considered that argument and

rejected it on the ground that SafeSport is not a governmental actor subject to due process requirements. (*Id.*) SafeSport was the adverse party in the JAMS arbitration, and Plaintiffs do not dispute that the arbitrator's decision qualifies as a "final judgment on the merits" for *res judicata* purposes. *Andrews*, 201 F.3d at 524. Thus, Navarro's due process claim against SafeSport (Count VI) is barred by *res judicata*.

By contrast, the complaint and other documents properly considered at the motion-to-dismiss stage do not clearly show that *res judicata* bars Giorgio and Navarro's other claims. *Res judicata* applies only when the plaintiff had a "full and fair opportunity to litigate" their claims in the original case. *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481 n.22 (1982); *see also Thornock v. JES Found. Repair*, No. 7:23-cv-00638, 2024 WL 1739755, at *6 (W.D. Va. Apr. 23, 2024) (quoting *Kremer* for this proposition). The court cannot conclude that Giorgio and Navarro had such an opportunity to litigate their remaining claims during the JAMS arbitrations. At the time, the SafeSport Code expressly prohibited arbitrators from considering challenges to SafeSport's "organizational practices or procedures." (Pls.' Resp. at 2–3 (quoting 2018 SafeSport Code at 27).) Although the arbitrator did hear Navarro's due process argument (potentially in violation of the arbitration rules), it is far from clear that the arbitrator would have entertained any other challenges to SafeSport's procedures. In fact, the complaint alleges that Navarro filed a motion arguing that SafeSport's failure to provide a pre-determination hearing violated the Amateur Sports Act, and that the arbitrator concluded he lacked jurisdiction to address that issue. (Compl. ¶ 78.) This suggests it is unlikely that the arbitrator would have considered any additional procedural challenges.

Unlike Navarro, Giorgio did not attempt to challenge SafeSport's procedures during his JAMS arbitration; the arbitration focused solely on whether his sanction was appropriate. (*See* Giorgio Arbitration Decision at 3–9.)  Giorgio's decision not to allege procedural claims is understandable, given that the SafeSport Code in effect at the time prohibited litigating such issues in arbitration.  Defendants emphasize that the Code gave the arbitrators the power to resolve issues related to their jurisdiction.  (*See* 2018 SafeSport Code at 28.)  This, they contend, shows that Giorgio could have argued that the arbitrator should consider procedural claims.  (SafeSport Reply at 3); *see also Callaghan*, 2018 WL 4107951, at *5–6 (applying same reasoning to hold that plaintiff failed to exhaust administrative remedies for procedural claims arising from SafeSport decision).  But it would be inherently unfair to fault Giorgio for not making this argument when another section of the Code expressly prohibited parties from challenging SafeSport's procedures during arbitration.  Based on that restriction, the court declines to hold that Giorgio clearly had a "full and fair opportunity to litigate" his claims during the JAMS arbitration.  *Kremer*, 456 U.S. at 481 n.22.

For these reasons, the court will not dismiss Giorgio and Navarro's claims (aside from Navarro's claim in Count VI) for *res judicata*.[11]  Ultimately, however, this conclusion has no effect on the outcome of the motions to dismiss, as Giorgio and Navarro's claims fail under Rule 12(b)(6) for other reasons.

---

[11] USEF separately argues for *res judicata* based on the AAA Panel's December 2023 decision resolving the complaint Giorgio and Navarro filed with USOPC.  (USEF Mem. at 22–23.)  But the AAA Panel's decision does not have preclusive effect because it was not a final judgment on the merits.  The AAA Panel concluded that it lacked jurisdiction to resolve the claims, (AAA Panel Decision at 2), and dismissals for lack of jurisdiction do not qualify as final adjudications on the merits.  *See, e.g., Shoup v. Bell & Howell Co.*, 872 F.2d 1178, 1180–81 (4th Cir. 1989); Fed. R. Civ. P. 41(b).

### D. Analysis of Plaintiffs' Individual Claims

Defendants' remaining Rule 12(b)(6) arguments focus on the sufficiency of Plaintiffs' individual claims. The court concludes that Counts I through VI all fail as a matter of law and the court will decline to exercise supplemental jurisdiction over Plaintiffs' one state-law claim (Count VII).

### 1. Alleged Violations of Amateur Sports Act (Counts III and IV)

Counts III and IV allege that SafeSport's adjudication procedures violate 36 U.S.C. § 220522(8), which requires NGBs to provide "fair notice and opportunity for a hearing . . . before declaring [an] individual ineligible to participate" in an Olympic or Paralympic sport. (Compl. ¶¶ 110–30.) Defendants argue that the Amateur Sports Act does not provide a private right of action to sue for violations of the statute. (USEF's Reply in Supp. of Mot. to Dismiss at 18–20 (Dkt. 48); SafeSport Mem. at 21–22.)

Plaintiffs appear to concede, as they must, that the Amateur Sports Act has barred private rights of action for alleged violations of the statute since the 2020 Amendment. That amendment added two express provisions to § 220541—the section addressing SafeSport—stating that the statute does not "create a private right of action." 134 Stat. at 960–62; 36 U.S.C. §§ 220541(a)(2)(C), 220541(d)(3)(B). But Plaintiffs emphasize that those provisions were not in the Act in 2018, when SafeSport issued the decisions banning Giorgio and Navarro from USEF events. (Pls.' Resp. at 15–16.) They contend that the version of the Act in effect at that time provided an implied private right of action to challenge SafeSport's compliance with the statute. (*Id.* at 16–17.)

Plaintiffs overlook that the Act expressly prohibited private rights of action even before the 2020 Amendment. A section of the Act that predates 2018, § 220505(b)(9), states that no "provision *of this chapter* shall create a private right of action under this chapter." 36 U.S.C. § 220505(b)(9) (emphasis added); *see* Pub. L. 105-277, 112 Stat. 2681-604 (1998). The relevant chapter, Chapter 2205, includes § 220541 and the other sections governing SafeSport.

Section 220541 does appear to confer certain rights on respondents in SafeSport cases—such as the requirement of "fair notice and an opportunity to be heard." 132 Stat. at 321. However, such fair notice and an opportunity to be heard are to be provided in connection with SafeSport's investigation and resolution of alleged sexual abuse cases in violation of its policies and procedures. 36 U.S.C. § 220541(a)(1)(E). The court therefore concludes that the Amateur Sports Act prohibits Giorgio and Navarro from bringing a statutory cause of action to challenge SafeSport's decisions.[12] *See, e.g.*, *Haney v. USA Gymnastics, Inc.*, No. 21-07213, 2022 WL 909871, at *3–4 (D.N.J. Mar. 29, 2022) (holding that § 220505(b)(9) required dismissal of plaintiff's claims that USA Gymnastics, an NGB, violated the Act). Accordingly, Counts III and IV fail as a matter of law.

## 2. Constitutional Due Process Claims (Counts V and VI)

Counts V and VI allege violations of the Fifth Amendment Due Process Clause. Count V (alleged against all Defendants) asserts that the Amateur Sports Act violates the

---

[12] The fact that Plaintiffs seek declaratory relief does not affect this conclusion. As Defendants note, the Declaratory Judgment Act does not provide a cause of action where none is otherwise available—declaratory relief is available only when there is some other right to a judicial remedy. *See Doe v. U.S. Ctr. for SafeSport, Inc.*, No. C23-6067, 2024 WL 3924663, at *10 (W.D. Wash. Aug. 23, 2024) (citing *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022)); *see also Schilling v. Rogers*, 363 U.S. 666, 677 (1960).

Due Process Clause by failing to require a pre-determination hearing in SafeSport cases. (Compl. ¶¶ 131–46.)   Count VI (alleged against SafeSport only) claims that the SafeSport Code violates Plaintiffs' due process rights.  (*Id.* ¶¶ 147–76.)

Plaintiffs' due process claims turn on Defendants' status as governmental actors. Plaintiffs try to argue otherwise.  They suggest their right to relief under Count V "does not depend on a party being a state actor" because they are merely seeking a declaratory judgment that the Amateur Sports Act is unconstitutional.   (Pls.' Resp. at 18.)   That argument is unavailing.  Because only a governmental actor can violate one's due process rights, the Act may run afoul of the Due Process Clause only if Defendants qualify as governmental actors.  *See, e.g.*, *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989).

The Supreme Court has squarely held that USOPC is not a governmental actor subject to the Due Process Clause.  *See S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 542–47 (1987) [hereinafter *SFAA*].  USEF and SafeSport argue that they do not qualify as governmental actors for similar reasons.  (USEF Mem. at 7–11; SafeSport Mem. at 16–17.)  Plaintiffs concede that USOPC and USEF are not governmental actors, (Tr. of Dec. 5, 2024 Mots. Hr'g at 46:3–14), so the only contested question is whether SafeSport so qualifies.

The Fourth Circuit has "recognized four exclusive circumstances under which a private party can be deemed to be a state actor": "(1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3)

when the state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen." *DeBauche v. Trani*, 191 F.3d 499, 507 (4th Cir. 1999) (quoting *Andrews v. Fed. Home Loan Bank of Atlanta*, 998 F.2d 214, 217 (4th Cir. 1993)).

The Supreme Court's reasoning in *SFAA* is useful when evaluating whether SafeSport meets one of those criteria. In *SFAA*, the Court considered the structure of USOPC (then known as USOC) and the authority the Amateur Sports Act granted to it. To start, the Court recognized that USOC was a private corporation established under federal law, but noted that "[t]he fact that Congress granted it a corporate charter does not render the USOC a Government agent." *SFAA*, 483 U.S. at 543–44. In fact, "[e]ven extensive regulation by the government does not transform the actions of the regulated entity into those of the government." *Id.* at 544. Nor did "the intent on the part of Congress to help [the entity] obtain funding" indicate that USOC was a governmental actor. *Id.* ("The Government may subsidize private entities without assuming constitutional responsibility for their actions.").

The Court then looked to the various functions USOC performed. *Id.* at 544–45. It recognized that "the activities performed by the USOC serve a national interest," *id.* at 544, but, it explained, the fact "[t]hat a private entity performs a function which serves the public does not make its acts [governmental] action," *id.* (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982)). The Amateur Sports Act, the Court noted, "merely authorized the USOC to coordinate activities that always have been performed by private entities. Neither the

conduct nor the coordination of amateur sports has been a traditional governmental function." *Id.* at 544–45.

Finally, the *SFAA* Court reasoned that the government "normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the [government]." *Id.* at 546 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). The Court concluded that the USOC power in question—the ability to enforce an exclusive right to use the word "Olympic"—was not a governmental decision, and it found "no evidence that the Federal Government coerced or encouraged the USOC in the exercise of its right." *Id.* at 547. Rather, the government merely approved of or acquiesced in USOC's initiatives, which was not enough to transform USOC into a governmental actor. *Id.* (citing *Blum*, 457 U.S. at 1004–05).

Applying those principles here, the court concludes that SafeSport is not a governmental actor. As an initial matter, the Amateur Sports Act explicitly states that it should not be construed "to render [SafeSport] a state actor." 36 U.S.C. § 220541(a)(2)(D). But courts should not necessarily give much weight to that kind of disclaimer. *See Dep't of Transp. v. Ass'n of Am. R.Rs.*, 575 U.S. 43, 56 (2015) (Alito, J., concurring) (stating that statutory language disclaiming Amtrak's status as a government department, agency, or instrumentality "cannot control for constitutional purposes").

That said, SafeSport's structure and functions point to the same conclusion. Unlike USOPC, SafeSport is not even a federally chartered entity—it is a private corporation formed under Colorado state law. (Compl. ¶ 7.) Nor does the Amateur Sports Act delegate

a "traditionally and exclusively public function" to SafeSport.  *DeBauche*, 191 F.3d at 508.
While Congress made SafeSport independent from USOPC, SafeSport's functions still relate
to "the conduct [and] coordination of amateur sports," which have "always have been
performed by private entities."  *SFAA*, 483 U.S. at 544–45.  SafeSport's investigation and
adjudication functions fall under that umbrella, as they determine a person's eligibility to
participate in amateur sports.

The Act does enumerate SafeSport's functions and set certain parameters for
performing them—including the requirement that SafeSport "provide fair notice and an
opportunity to be heard."  36 U.S.C. § 220541(a)(1)(E).  But "[e]ven extensive regulation by
the government does not transform the actions of the regulated entity into those of the
government."  *SFAA*, 483 U.S. at 544.  SafeSport (and before it, USOPC and NGBs) created
and oversee the core policy framework governing SafeSport's response to reports of abuse.
The 2018 and 2020 Amendments to the Act are best understood as establishing some
requirements that SafeSport must follow when exercising that private authority.  They did
not transform SafeSport's private conduct into federal action.  If Congress wished to
federalize eligibility decisions, it could have established a federal agency to perform those
functions.  *See NCAA v. Tarkanian*, 488 U.S. 179, 194–95 (1988) (holding that state
university's adoption of NCAA's private disciplinary rules did not transform the NCAA into
a state actor because the university retained the ability to "establish its own standards").
Instead, Congress has largely "approv[ed] of or acquiesce[d] in" the private model the
Olympic movement developed.  *SFAA*, 483 U.S. at 547 (quoting *Blum*, 457 U.S. at 1004–05).

Finally, Congress has not "coerced" SafeSport to make eligibility decisions without a pre-deprivation hearing—SafeSport may choose to amend its Code to provide for one. *DeBauche*, 191 F.3d at 508. SafeSport's decisions therefore cannot be "deemed to be [those] of the [government]." *SFAA*, 483 U.S. at 546.

In short, there is no basis for treating SafeSport as an arm of the federal government. Plaintiffs barely respond to SafeSport's arguments on this issue, and they do not offer any persuasive counterarguments. The court concludes that no Defendant qualifies as a governmental actor and will dismiss Counts V and VI.[13]

### 3. Constitutional Claims: Separation of Powers (Counts I and II)

Counts I and II raise separation-of-powers challenges to SafeSport's structure and authority. Count I alleges that the Amateur Sports Act unconstitutionally delegates federal authority to SafeSport in violation of the nondelegation doctrine. (Compl. ¶¶ 82–101.) Count II alleges that the appointment of SafeSport's board of directors violates the Appointments Clause because the directors qualify as "officers of the United States." (*Id.* ¶¶ 102–09.)

#### i. *Count I: Unconstitutional Delegation Claim*

In Count I, Plaintiffs allege that Congress has unconstitutionally delegated to SafeSport the power to "draft, implement, administer, and enforce federal law and policy

---

[13] Even if Plaintiffs had not conceded the issue, USEF would not qualify as a governmental actor. USEF is private non-profit corporation chartered under state law. (Compl. ¶ 9.) USOPC—not the federal government—makes the decision to certify USEF and other amateur sports organizations as NGBs. 36 U.S.C. § 220521(a). While the Act sets out several eligibility requirements for NGBs, *id.* § 220522, it does not prescribe any congressional or other direct federal oversight of NGBs—that is USOPC's responsibility. Nor does the Act delegate to NGBs any traditional government functions. As is the case with USOPC and SafeSport, NGBs' delegated functions all relate to "the conduct [and] coordination of amateur sports," which "always have been performed by private entities." *SFAA*, 483 U.S. at 544–45; *see also Behagen v. Amateur Basketball Ass'n of U.S.*, 884 F.2d 524, 531 (10th Cir. 1989) ("Proceeding from this certain ground that [USOPC] is not a governmental actor, it follows a fortiori that [an NGB] is also not a governmental actor.").

regarding emotional, physical, and sexual abuse in Olympic and amateur sports." (*Id.* ¶ 99.)
The Constitution vests federal legislative power in Congress, executive power in the
President, and judicial power in the federal courts. U.S. Const. art. I, § 1; *id.* art. II, § 1; *id.*
art. III, § 1. By implication, the Vesting Clauses prohibit the federal government from
delegating "governmental function[s]" to private parties. *Carter v. Carter Coal Co.*, 298 U.S.
238, 311 (1936). While private entities may participate in "developing government standards
and rules" under the oversight of a federal entity, they may not "create[] the law or retain[]
full discretion over any regulations" that have the effect of federal law. *Oklahoma v. United
States*, 62 F.4th 221, 228–29 (6th Cir. 2023).

The Amateur Sports Act does not cross this constitutional line. To be sure,
SafeSport enjoys broad autonomy and operates without direct oversight from a federal
agency. If SafeSport exercised federal rulemaking or enforcement power, that lack of
oversight would violate the nondelegation doctrine. *See Nat'l Horsemen's Benevolent & Protective
Ass'n v. Black*, 53 F.4th 869, 881 (5th Cir. 2022) ("If the private entity does not function
subordinately to the supervising agency, the delegation of power is unconstitutional."). 
Critically, though, Congress has not delegated any such power to SafeSport. SafeSport lacks
the authority to promulgate or enforce federal rules. *Cf. id.* at 872–73, 886–87 (holding that
the Horseracing Integrity and Safety Act, as originally enacted, violated the nondelegation
doctrine because it empowered the Horseracing Integrity and Safety Authority to promulgate
federal regulations without giving the Federal Trade Commission any power to modify
them). Nor does the Amateur Sports Act give SafeSport any federal enforcement authority,

such as subpoena power. *See id.* at 874 (noting that the Horseracing Integrity and Safety Authority's enforcement powers included the power to issue subpoenas).

Instead, the 2018 and 2020 Amendments to the Act merely set parameters for SafeSport to follow when deciding whether individuals are eligible to participate in amateur sports—a role that "always ha[s] been performed by private entities" and is not a "traditional governmental function." *SFAA*, 483 U.S. at 545. Because SafeSport's underlying policies and procedures do not have the force or effect of federal law, Congress has not violated the nondelegation doctrine by codifying some of SafeSport's functions and responsibilities.

Plaintiffs argue that one provision in § 220541 compels the opposite result. They point to the statutory language stating that the policies and procedures SafeSport develops "shall apply as though they were incorporated in and made a part of section 220524" (the section addressing the duties of NGBs). 36 U.S.C. § 220541(b). This, Plaintiffs allege, codifies the SafeSport Code as part of the statute and unconstitutionally delegates legislative power to SafeSport. (Compl. ¶¶ 90–91.)

Section 220541(b) is not a model of clarity, but the court concludes that it does not give legislative effect to the SafeSport Code. Instead, the provision simply establishes that NGBs must adhere to relevant parts of the Code. Section 220541(b) was added to the Act via the 2018 Amendment. *See* 132 Stat. at 321. At the time, § 220524 did not contain any language addressing NGBs' obligations to safeguard amateur athletes from sexual abuse. By "incorporat[ing]" SafeSport's policies and procedures into § 220524, Congress clarified that

NGBs' duties include an obligation to follow the SafeSport Code.[14]  There is no indication that Congress, by adopting § 220541(b), intended to give the Code the full force and effect of a federal statute.

The Amateur Sports Act does not delegate any legislative or other governmental authority to SafeSport.  Accordingly, the court will dismiss Count I.

ii.    *Count II: Appointments Clause Claim*

Under the Appointments Clause, the President has the power to nominate, and with the advice and consent of the Senate, appoint "Officers of the United States."  U.S. Const. art. II, § 2, cl. 2.  In addition, Congress may vest the power to appoint "inferior Officers" in "the President alone, in the Courts of Law, or in the Heads of Departments."  *Id.*

SafeSport's directors are not appointed via any of these methods.  Rather the board of directors is responsible for electing individual directors.  (*See* Compl. ¶¶ 35, 106.)  To state a claim for an Appointments Clause violation, Plaintiffs must plausibly allege that SafeSport's directors are "inferior Officers."  To qualify as an inferior Officer, an individual "must occupy a continuing position established by law" and "exercis[e] significant authority pursuant to the laws of the United States."  *Lucia v. S.E.C.*, 585 U.S. 237, 245 (2018) (quotation marks omitted); *see Freytag v. Comm'r*, 501 U.S. 868, 881 (1991).

SafeSport's directors do not meet either requirement.  Starting with the first, their position is not "established by law."  The Amateur Sports Act says nothing about SafeSport's board of directors.  *Cf. Freytag*, 501 U.S. at 881 (holding that Special Trial Judges ("STJs") for

---

[14] The 2020 Amendment later added express language to § 220524 that requires NGBs to adopt policies and procedures for reporting abuse allegations that are "consistent with . . . the policies and procedures developed" by SafeSport.  134 Stat. at 959–60; 36 U.S.C. § 220524(a)(16).  Even after that amendment, § 220541(b) continues to serve a purpose by providing that NGBs must comply with all relevant parts of the SafeSport Code.

the U.S. Tax Court occupy a continuing position established by law, in part because the U.S. Tax Code specified their "duties, salary, and means of appointment"); *Lucia*, 585 U.S. at 247–48 (holding that Administrative Law Judges ("ALJs") for the Securities and Exchange Commission ("SEC") meet this requirement, in part because their "appointment is to a position created by statute").

Nor do SafeSport's directors (or the officials who make eligibility decisions) exercise any "significant authority pursuant to the laws of the United States." Although the Amateur Sports Act establishes guidelines for SafeSport's operations, SafeSport does not create or enforce any substantive federal law. *Cf. Freytag*, 501 U.S. at 873 (noting that STJs prepare proposed findings adjudicating charges and tax liabilities); *Lucia*, 585 U.S. at 249 (noting that SEC ALJs can issue decisions containing factual findings, legal conclusions, and remedies, which may be treated as the final action of the SEC). Instead, SafeSport resolves essentially private disputes about eligibility to participate in amateur sports. *See SFAA*, 483 U.S. at 544–45.

Because SafeSport's directors are not "inferior Officers," Count II also fails as a matter of law.

### 4.  State-Law Contract Claim (Count VII)

Finally, Count VII alleges that Plaintiffs' membership agreements with USEF were unconscionable adhesion contracts because they required Plaintiffs to agree to the SafeSport Code and its unlawful adjudication procedures. (Compl. ¶¶ 177–85.) Plaintiffs seek a declaratory judgment "that the sanctions imposed on them by virtue of their membership agreements are void." (*Id.* ¶ 185.) They do not allege that the court has diversity jurisdiction

over Count VII—in fact, they do not address the court's jurisdiction over this count at all. (*See id.* ¶¶ 10, 177–85.)

Because the court will dismiss all federal claims in this action, it will exercise its discretion and decline supplemental jurisdiction over Count VII. A district court has "wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Henderson v. Harmon*, 102 F.4th 242, 251 (4th Cir. 2024) (quoting *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995)). When deciding whether to exercise supplemental jurisdiction over a state-law claim in this scenario, the court weighs multiple factors, including "judicial economy, convenience, fairness, and comity." *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). "[G]enerally, when a district court dismisses all federal claims in the early stages of litigation . . . it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice." *Id.* (citation omitted).

Here, the court concludes that dismissing Count VII would not be unduly inconvenient, unfair, or wasteful of judicial resources. At this early stage of the proceedings, the parties have not conducted discovery, and the court notes that the parties' briefing on the motions to dismiss devotes little attention to the merits of Count VII. The court therefore finds it appropriate to dismiss this claim without prejudice.

### IV.    Conclusion

For the reasons set forth above, the court will grant Defendants' motions to dismiss (Dkts. 29, 30, 33). All counts alleged against USOPC will be dismissed without prejudice for lack of subject matter jurisdiction. Aside from Count VII, all counts alleged against

SafeSport and/or USEF will be dismissed with prejudice, as the court concludes that Plaintiffs cannot correct the legal deficiencies in those claims via amendment.  Count VII will be dismissed without prejudice.

An appropriate Order shall accompany this Memorandum Opinion.

**ENTERED** this  15th  day of January, 2025.

/s/ *Jasmine H. Yoon*
_____
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE